William A. MACK, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

No. 93–AA–1439.

District of Columbia Court of Appeals.

Submitted Nov. 29, 1994.

Decided Dec. 22, 1994.

William A. Mack, pro se.

Michael A. Milwee was on the brief, for respondent.

Before FERREN and KING, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

Petitioner, William A. Mack, seeks review of a decision of the Department of Employment Services ("DOES") Office of Appeals and Review ("OAR"), that disqualified him, on the basis of job-related misconduct, from receiving unemployment benefits. D.C.Code § 46–111(b) (1990 Repl. and 1994 Supp.). Because the record does not contain the findings necessary to support a discharge for

misconduct, we must vacate and remand for further proceedings.

## I.

In early April 1992, petitioner resigned in lieu of termination from his job as a Corrections Officer at the Department of Corrections at Lorton, Virginia. On February 19, 1992, about two months before his resignation, petitioner had been indicted on four counts of accepting bribes to provide cocaine to prison inmates, 18 U.S.C. § 201(b)(2) (1988); possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) (1988); introducing contraband, D.C.Code § 22–2603 (1989 Repl.); and illegal use of communication facility, 21 U.S.C. § 843(b) (1988).[1] Petitioner's trial began on April 6, 1992. The next day he pled guilty to accepting a bribe to deliver cocaine to a Lorton inmate.[2] Petitioner later signed a formal plea agreement on April 21, 1991, which was filed in court on April 22, 1992.

Petitioner filed for unemployment compensation on December 7, 1992, indicating to the agency that he had voluntarily quit his job because he was being investigated for accepting a bribe. The Claims Examiner found that petitioner had voluntarily quit his job without good cause connected with work and disqualified him from receiving unemployment benefits. D.C.Code § 46–111(a) (1990 Repl.). Petitioner filed an administrative appeal.

At a hearing before the Appeals Examiner, petitioner testified that, on April 2, 1992, he had called to tell his supervisor, Bill Hendricks, that he would be absent from work because he had to see his probation officer.[3] Petitioner maintained that Hendricks had wrongly advised an F.B.I. agent, who was looking for petitioner,[4] that Hendricks was unaware of petitioner's whereabouts and that petitioner was A.W.O.L. According to petitioner, this misinformation had led to his incarceration and to the revocation of his bond. Petitioner further maintained that he had been forced to resign upon his release from jail on April 6, 1992.

The Appeals Examiner found that petitioner had been "constructively discharged."[5] 7 DCMR § 311.8 (1986). She then pointed out that, in order to sustain such a discharge as a bar to unemployment benefits, the employer had the burden of proving "misconduct." 7 DCMR § 312.2 (1986). According to the Appeals Examiner, the hearsay testimony of the employer's representative, who had not been present at petitioner's discharge,[6] was not sufficient, under 7 DCMR § 312.7 (1986), to corroborate the written documents showing misconduct by petitioner.[7] Crediting petitioner's account of the events leading to his discharge, the Appeals Examiner, on March 1, 1993, concluded that the employer had

---

1. Petitioner was required to post a $10,000 bond as a condition of his release. In addition, he was forbidden from entering the confines of Lorton Reformatory, effectively requiring his employer to transfer him to a post outside Lorton.

2. Evidence showing that petitioner had pled guilty on April 7, 1992 was not before the Appeals Examiner.

3. Petitioner had been arrested in July 1991 (presumably in connection with the bribery incident) and was free on bond awaiting trial. As a condition of his release he apparently had to meet with a probation officer, although this is not noted on the "Order Setting Conditions of Release."

4. The F.B.I. agent had been looking for petitioner because petitioner was suspected of writing a threatening letter to the police informant in his bribery case. This suspicion was never proved.

5. The transcript of the hearing before the Appeals Examiner shows that petitioner did not receive a "letter of proposed removal" from the employer. The employer argued that the absence of such a letter cut against the contention that petitioner had been constructively discharged. Both petitioner's and the employer's respective testimony about the manner in which petitioner had left his job is muddled because each side, at different times, argued two conflicting theories, namely, that petitioner voluntarily had left his job and that he had been forced to resign. The Appeals Examiner resolved this dispute by finding that petitioner had been constructively discharged.

6. Bill Hendricks, the supervisor who had constructively discharged petitioner, no longer was working for the employer and was not present at the hearing before the Appeals Examiner.

7. These documents included a copy of the personnel action pending against petitioner, his clearance record, and his written plea agreement of April 22, 1992.

failed to meet its burden of proving that petitioner had been discharged for job-related misconduct. Consequently, she reversed the decision of the Claims Examiner and ruled that petitioner was eligible for unemployment benefits.

The employer appealed to OAR, which, on October 14, 1993, reversed the Appeals Examiner, concluding that her decision was "not supported by substantial evidence in the record." Specifically, OAR found that petitioner's April 22, 1992 written plea agreement, which the employer had entered in evidence before the Appeals Examiner, see *supra* note 7, was sufficient to support a finding that petitioner's employment had been terminated for misconduct, making him ineligible, under D.C.Code § 46–111(b), for unemployment benefits.[8] Petitioner now appeals this decision.

## II.

■ Our review of an agency's final decision is directed to the question whether that decision is supported by substantial evidence in the record as a whole. D.C.Code § 1–1510(a)(3)(E) (1992 Repl.); *see Washington Post Co. v. District Unemployment Compensation Bd.*, 377 A.2d 436, 439 (D.C.1977). While our review is limited in that we may not substitute our judgment for that of the agency, we "are required to set aside [agency] holdings if they are not supported by substantial evidence in the record." *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 676 (D.C.1984). Moreover, in reviewing the final decision of an agency, we are limited to the record on appeal and cannot consider issues or evidence not presented to the agency. *John D. Neumann Properties, Inc. v. District of Columbia, Bd. of Appeals and Review*, 268 A.2d 605, 606 (1970).

■ We have interpreted the Administrative Procedures Act to impose the following requirements on agency decisions:

(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings.

*Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C. 1984) (citations omitted). If the agency "fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984)

■ In this case, OAR found that petitioner had been discharged for misconduct, that is, for accepting a bribe to deliver cocaine to a prison inmate. In *Hickenbottom v. District of Columbia Unemployment Compensation Bd.*, 273 A.2d 475, 477–78 (D.C.1971), we defined misconduct as:

[1] an act of wanton or wilful disregard of the employer's interest, [2] a deliberate violation of the employer's rules, [3] a disregard of standards of behavior which the employer has the right to expect of his employee, or [4] negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Id.* (citations omitted); *see also Williams v. District Unemployment Compensation Bd.*, 383 A.2d 345, 349 (D.C.1978). It is clear that a conviction for accepting a bribe to deliver cocaine to prison inmates is "misconduct" under D.C.Code § 46–111(b) because by doing so petitioner, at a minimum, disregarded the standards of behavior which his employer had a right to expect of him.[9]

■ The record establishes that petitioner, who pled guilty to accepting a bribe from a Lorton inmate, was guilty of job-related misconduct, but the record does not establish

---

8. OAR upheld the Appeals Examiner's finding that petitioner had been constructively discharged.

9. Moreover, the employer's rules provided for discharge of employees convicted of misdemeanors "when the conviction is based upon conduct that would adversely effect" the employer.

that petitioner was discharged as a result of this misconduct. Rather, the limited facts in the record—namely, that petitioner was discharged sometime in early April and that he later signed a plea agreement on April 21, 1992—do not support OAR's determination that petitioner was discharged *as a result of* his misconduct. On the other hand, the Appeals Examiner's ruling—that petitioner is entitled to benefits—is also deficient. A review of the record makes clear that, in concluding the employer had failed to meet its burden of proving misconduct, the Appeals Examiner failed to make crucial findings relevant and necessary to determining whether petitioner was, or was not, discharged for *misconduct.*

At the hearing before the Appeals Examiner, the employer submitted petitioner's plea agreement signed on April 21, 1992. The Appeals Examiner held that this agreement was irrelevant because it had been signed *after* petitioner's constructive discharge from employment in early April. The Appeals Examiner, however, did not inquire, or make any finding, as to whether, before discharging petitioner, the employer (1) had become aware of petitioner's oral guilty plea on April 7, 1992,[10] or (2) had learned of petitioner's intent to plead guilty, or (3) had, through its own internal investigation, determined that petitioner was guilty of bribery. *See Colton,* 484 A.2d at 552 (Appeals Examiner found that petitioner's violation of overtime policy

was principal reason for her discharge but failed to make critical finding as to whether petitioner had authorized the overtime hours of other employees with employer's approval). In any of these circumstances, the employer would have been justified in discharging petitioner for misconduct.[11] However, given the evidence presented, the Appeals Examiner failed to make these inquiries. Consequently, she left the record too thin to support OAR's conclusion that petitioner had been fired for misconduct. *See Selk v. District of Columbia Dep't of Employment Servs.,* 497 A.2d 1056, 1059 (D.C.1985).[12]

Furthermore, the record shows there was a dispute about the date that petitioner had been forced to resign, and that the Appeals Examiner failed to resolve this dispute. At the hearing, the employer submitted petitioner's clearance record showing that he had resigned on April 8, 1992. Petitioner, however, claimed he had never signed this record. Rather, petitioner maintained that his last day on the job had been April 2, 1992 and that he had resigned (i.e., had been constructively discharged) after his release from jail on April 6, 1992.[13]

The Appeals Examiner did not make findings as to petitioner's resignation date or as to the issue of the allegedly forged clearance record. Findings on these issues are essential. If, for example, it is established that the employer found out on April 7, 1992

10. The date a plea agreement is signed does not necessarily establish the date a defendant actually pled guilty. For example, in this case, petitioner orally pled guilty on April 7, 1992 during his trial, but he signed a formal plea agreement, with related conditions, on April 21, 1992.

11. The employer has submitted a document to this court showing that petitioner orally pled guilty on April 7, 1992. Because neither this document, nor the April 7, 1992 date, were presented to the Appeals Examiner, we cannot consider them on appeal. *See Scott v. Police and Firemen's Retirement and Relief Bd.,* 447 A.2d 447, 449 n. 3 (D.C.1982); *Dietrich v. District of Columbia Bd. of Zoning Adjustment,* 320 A.2d 282, 287 (D.C.1974); *John D. Neumann Properties, Inc.,* 268 A.2d at 606.

12. DOES at this point has not made the following argument, in the alternative: that even if the record before the Appeals Examiner did not re-

flect the employer's awareness of petitioner's guilty plea (or of the related misconduct) at the time of petitioner's discharge, that plea or the facts underlying it—clearly reflecting misconduct—can retroactively trump the Appeals Examiner's March 1, 1993 decision; *i.e.,* upon a remand allowing reopening of the record, such misconduct can serve as a basis for denying petitioner unemployment compensation benefits, even though the employer's initial presentation did not support a misconduct discharge.

13. The Appeals Examiner, in questioning the employer's representative, stated that petitioner's separation from his job occurred either on April 2, 1992 or on April 6, 1992, but she did not make an explicit finding of petitioner's resignation date.

about petitioner's guilty plea that day, the employer presumably can prevail only if it discharged petitioner on April 8, 1992, not on April 6 (before the plea) as petitioner contends.[14] Accordingly, we cannot say the Appeals Examiner made the required findings on each contested issue of fact, *see* D.C.Code § 1–1509(e) (1992 Repl.), or that OAR's determination is supported by substantial evidence in the record.

We therefore must vacate OAR's decision and remand the case for the entry of additional findings by the Appeals Examiner on the issue of whether the employer was aware of petitioner's guilt or his intent to plead guilty before the employer discharged him. If the Appeals Examiner finds that the employer discharged petitioner as a result of his misconduct in accepting a bribe, then the OAR may enter a new order denying petitioner's application, subject to any further right of appellate review that he may have. *See Colton,* 484 A.2d at 553. If, on the other hand, the Appeals Examiner finds that, at the time the employer discharged petitioner, the employer was not aware of the petitioner's guilt of bribery, or of his intent to plead guilty to bribery, or at least of the acts underlying his eventual criminal conviction, then OAR must grant petitioner's application for unemployment benefits, *see id.,* unless other grounds exist for denial of the application, *see supra* note 12.

*Vacated and Remanded.*

---

**14.** Theoretically, the employer could prevail by establishing it had found out, through internal investigation, that petitioner had committed bribery, and that the employer had terminated petitioner's employment on April 6 (or earlier) for that reason. The employer has already taken the position, however, that petitioner's job ended on April 8, 1992.