Michael T. KING, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

Moonlighting Electric Co., and ITT Hartford Insurance Co., Intervenors.

No. 98–AA–705.

District of Columbia Court of Appeals.

Argued Sept. 16, 1999.
Decided Dec. 16, 1999.

---

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

William R. Korth for intervenors.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Petitioner, Michael T. King, was temporarily disabled by acute back pain, which he suffered while working as an electrician at a job site in the District of Columbia. He filed a claim for benefits under the District of Columbia Workers' Compensation Act of 1979, as amended, D.C.Code §§ 36–301 *et seq.* (1997) (hereinafter, the "Act" or the "WCA"). His claim was dismissed for lack of subject matter jurisdiction on the ground that his employment was not "principally localized" in the District.

King's petition for review of that decision calls upon us to analyze the coverage provision of the Act, D.C.Code § 36–303, as it was amended effective March 6, 1991. We are asked to decide how that statute applies to a case of cumulative traumatic injury arising out of employment that is carried on both inside and outside the District of Columbia. The answer to that question depends on how the "time of injury" is fixed in a cumulative trauma case. We do not decide that legal question, however, because we find that respondent District of Columbia Department of Employment Services failed to make findings of material fact, while misapprehending and failing to construe the applicable law. We are therefore constrained to reverse the dismissal of King's claim and to remand for further proceedings. On remand, the Department needs to make a clear finding as to whether King's disability was in fact caused by his employment. If the Department does find that King sustained a job-related, cumulative traumatic injury to his back, then it must construe § 36–303 in order to articulate the rule under that statute for fixing the "time of injury" in cumulative trauma cases. The Depart-

ment must then apply that rule to the facts of King's case in order to determine whether his injury is covered by the WCA.

## I.

Petitioner King began working for intervenor Moonlighting Electric Company ("Moonlighting") in July 1986 as a foreman and service electrician. King was hired in Maryland, where Moonlighting is headquartered; and he resided in that state at the time of the hearing. Most of King's jobs as an employee of Moonlighting were in Maryland, but he also worked from time to time at sites in other jurisdictions, including the District of Columbia.

On April 11, 1994, King was performing work on the second day of a job in the District of Columbia when he experienced back pain severe enough that he had to stop working. He did not return to work until August 31, 1994. King subsequently filed a claim under the WCA for temporary total disability benefits from April 11 through August 31, 1994, as well as for medical expenses. Moonlighting and its insurer, intervenor ITT Hartford, contested this claim. A hearing was held on April 12, 1996.

The evidence before the hearing examiner established that King had a history of back problems and raised the issue of the relationship of those back problems to King's employment. The examiner found that the electrician position that King held with Moonlighting for some eight years did involve a degree of physical exertion, requiring King to lift at least sixty pounds, bend, climb ladders, carry material, stoop, crawl, and get into awkward positions. King testified that he first experienced back pain on the job in December 1993 while working in an electrical closet and

that his symptoms progressively worsened over the next few months. He also testified that in the early 1980s he had seen a doctor for back pain, which medical records indicated was related to a tennis injury, and again in 1992 for back pain that lasted a couple of weeks. In his decision, the hearing examiner noted that King "first sought treatment for back pain in 1984," approximately two years before he commenced his employment with Moonlighting. One of King's treating physicians classified King's problem as a degenerative disk disease with bulging disks that might at some future date require surgical intervention.

King claimed that on April 11, 1994, when his back pain made it impossible for him to continue working, he sustained an accidental, work-related injury which aggravated his preexisting back condition. He based this claim on his testimony that "I was working, and the pain and irritation of lifting cable and stuff finally just had got to be too much for me to take." King offered no further evidence as to what (if any) activity or event on April 11 triggered the increased back pain that he experienced, or as to the nature of the work he was performing when he became disabled. In the absence of such evidence, King relied upon the presumption embodied in D.C.Code § 36–321(1) of a causal connection between his disability and a work-related event.[1]

In opposition to King's claim, Moonlighting and ITT Hartford denied that King sustained an injury at work on April 11 and denied that his disability was work-related at all. They argued that the medical evidence showed that King had back problems that pre-dated his employment,

1. Section 36–321(1) provides, in pertinent part, as follows: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of evidence to the contrary: (1) That the claim comes within the provisions of this chapter...." This statutory presumption is "designed to effectuate the humanitarian pur-

poses of the statute" and "reflects a 'strong legislative policy favoring awards in arguable cases.'" *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987) (quoting *Wheatley v. Adler*, 132 U.S.App. D.C. 177, 183, 407 F.2d 307, 313 (1968) (en banc)).

and that he became disabled simply because his back condition degenerated naturally to the point where he was no longer able to work.

In his decision denying King's claim, the hearing examiner made no finding as to whether King's back injury and disability were, in fact, work-related, either because King sustained an aggravating injury on April 11 or because over time the physical exertion of his job subjected his back to cumulative trauma and consequent gradual injury. The examiner likewise made no finding as to *the time* of any work-related back injury that King may have sustained. Nor did the examiner make a finding as to *when*, if ever, King knew or should have known that his back pain was related to his work.

The hearing examiner found it unnecessary to resolve these and similar questions because he concluded as a threshold matter that King's claim was outside the coverage of the WCA. Ignoring King's claim that he suffered an aggravating injury on April 11, and assuming (without deciding) that King's disability resulted from a "cumulative trauma," the examiner said that there was "no definitive date of injury which would bring this matter within the ambit" of the coverage provisions of D.C.Code § 36–303(a). The examiner did not explain how he arrived at this conclusion, but he apparently considered § 36–303(a) to be inapplicable because it provides that coverage partially depends on the time of the injury and whether the injury occurred inside or outside the District of Columbia.[2]

The examiner thereupon stated (again, without explanation) that "the jurisdictional question herein is resolved pursuant to the pre-March 6, 1991 law," *i.e.*, the law in effect prior to the effective date of the last amendment of § 36–303. Under former § 36–303(a), an injury was covered by the WCA only if, "at the time" of the injury, the employment was "principally localized in the District of Columbia," regardless of whether the injury occurred inside or outside the District.[3] Applying the three-prong *Hughes*[4] test, the examiner found that "the geographical contacts between claimant's employment relationship and the state of Maryland are more substantial, qualitatively and quantitatively, than those same contacts between claimant's employment relationship and any other jurisdiction." Accordingly, the examiner concluded that King was excluded from the coverage of the Act, inasmuch as his em-

---

2. As amended effective March 6, 1991, D.C.Code § 36–303(a) provides for coverage in pertinent part as follows:

 (a) Except as provided in subsections (a–1) through (a–3) of this section, this chapter shall apply to:

 (1) The injury or death of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia; and

 (2) The injury or death of an employee that occurs outside the District of Columbia if, at the time of the injury or death, the employment is localized principally in the District of Columbia.

3. Prior to March 6, 1991, D.C.Code § 36–303(a) read, in pertinent part, as follows:

 This chapter shall apply in respect to the injury or death of an employee of an employer, as defined in paragraphs (9) and (10) of § 36–301, irrespective of the place where the injury or death occurs provided that at the time of such injury or death this employment is principally localized in the District of Columbia . . . .

4. In *Hughes v. Washington Metro. Area Transit Auth.*, H & AS No. 83–60, OWC No. 7116 (March 6, 1984), *aff'd sub nom. Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567 (D.C.1985), the Director of the Department of Employment Services articulated the following test for determining where a claimant's employment is "principally localized":

 1) The place(s) of the employer's business office(s) or facility(ies) at which or from which the employee performs the principal service(s) for which he was hired; or

 2) If there is no such office or facility at which the employee works, the employee's residence, the place where the contract is made and the place of performance; or

 3) If neither (1) nor (2) is applicable, the employee's base of operations.

*Id.* at 569.

ployment was not principally localized in the District of Columbia.

On review, the Director of the Department of Employment Services affirmed the hearing examiner's decision. Specifically approving the examiner's analysis of the coverage question, the Director stated:

Claimant testified at the hearing that he had experienced back pain before April 11, 1994. Specifically, Claimant testified that his back pain began in December of 1993 but did not become disabling until April 11, 1994. This in the Director's opinion, and as correctly concluded by the Hearing Examiner, would make Claimant's injury a cumulative one in which there is no definitive date of injury. There being no definitive date of injury, the 1991 amendment to the Act would not [be] applicable in this matter. Therefore, the Hearing Examiner was correct in utilizing pre-existing legislation as well as the interpretation established in the *Hughes* case in order to determine whether jurisdiction was conferred upon Claimant's injury.

On appeal, King argues that (1) he sustained an aggravating injury on April 11, 1994, in the District of Columbia, a factual issue which the hearing examiner failed to resolve, and (2) even if there was no identifiable injury on April 11 and his injury reasonably could be termed "cumulative," the hearing examiner erred as a matter of law in failing to determine a "time of injury," which is a prerequisite to applying D.C.Code § 36–303(a). King argues that, for purposes of that statute, the hearing examiner and the Director should have ruled that he sustained his injury while at work in the District of Columbia, and therefore that his claim was covered by the WCA pursuant to subsection (a)(1). (King does not contend that his employment was principally localized within the District; rather, he contends that the locus of his employment was immaterial given that his injury occurred when he was in the District.) Moonlighting and ITT Hart-

ford, on the other hand, ask us to affirm the denial of King's claim on the grounds that (1) King was not injured on April 11, and (2) medical testimony established that his disability was attributable to a natural progression of his longstanding back ailments that was unrelated to his employment.

## II.

■ For an administrative agency decision to "pass muster" under the District of Columbia Administrative Procedure Act ("DCAPA"), D.C.Code §§ 1–1501 *et seq.* (1999),

(1) the [agency's] decision must state findings of fact on each material, contested factual issue;

(2) those findings must be based on substantial evidence; and

(3) the conclusions of law must flow rationally from the findings.

*Washington Times v. District of Columbia Dep't of Employment Servs.*, 724 A.2d 1212, 1216 (D.C.1999) (quoting *Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C.1984)).

■ Given the posture in which this case comes to us, we deem it appropriate to reemphasize that "[t]he agency is required to make basic findings of fact on all material issues. Only then can this court determine upon review whether the agency's findings are supported by substantial evidence and whether those findings lead rationally to its conclusions of law." *Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 792 (D.C.1997) (citations omitted). "If the agency 'fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.'" *Mack v. District of Columbia Dep't of Employment Servs.*, 651 A.2d 804, 806 (D.C.1994) (quoting *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984)).

Where, as in this case, "questions of law are concerned, this court reviews the agency's rulings de novo...." *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996). To be sure, "[a]n agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court. There is, however, a well-recognized exception to this rule. When the agency's decision is inconsistent with the applicable statute ... we owe it far less deference, if indeed we owe it any deference at all." *Columbia Realty Venture v. District of Columbia Rental Hous. Comm'n*, 590 A.2d 1043, 1046 (D.C. 1991) (citations omitted). "[I]f the agency's decision is based upon a material misconception of the law, this court will reject it." *Jerome Management, Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 182 (D.C.1996).

Nonetheless, where the meaning of a statute is unclear, we will "accord considerable weight to its construction by the agency responsible for administering" it. *Harris v. District of Columbia Office of Worker's Compensation*, 660 A.2d 404, 407 (D.C.1995). "[O]rdinarily," therefore, "this court will not attempt to interpret the agency's statute until the agency itself has done so." *Wahlne v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 1196, 1199 (D.C.1997). Instead, we will remand to permit the agency to engage in the necessary analysis of the legislation it is charged with carrying out. *See id.; see also Proctor v. District of Columbia Dep't of Employment Servs.*, 737 A.2d 534, 539, 541 (D.C.1999); *Mushroom Transp. v. District of Columbia Dep't of Employment Servs.*, 698 A.2d 430, 434 (D.C.1997). In particular, a dispute over the coverage of the law—such as we have in the case now before us—"is quintessentially a decision for the [agency] to make in the first instance, involving, as it does, a situation where an agency is delegated broad authority to administer a statutory scheme."

*Taggart–Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996).

With these principles of appellate review in mind, we turn to the issues raised by the present petition for review.

### III.

When the Council originally enacted the District of Columbia Workers' Compensation Act of 1979, it provided in D.C.Code § 36–303 that an injured worker could recover benefits under the WCA only if the employment was "principally localized in the District" at the time the injury occurred, regardless of where the injury occurred. See *supra* note 3. This meant that employees who were injured on the job in the District of Columbia could not recover under D.C. law if their employment was principally localized outside the District when they sustained their injuries. *See Hughes*, 498 A.2d at 569–70 (Council made a deliberate choice in the 1979 Act in favor of narrowing workers' compensation coverage).

In 1991, the Council amended § 36–303 to broaden the coverage of the WCA so as to protect all employees who are injured on the job in the District, regardless of the principal locus of their employment. As explained in the legislative history of the amendment:

This section is amended to change the focus of entitlement of an injured worker to compensation for an injury or death from the location where the employee's employment is "principally localized" to the location where the injury or death occurred. Forty-nine of fifty jurisdictions use a situs rule.... Thus, the recommended change states that the injury or death of an employee that occurs in the District while the employee is performing work is covered by the laws governing workers' compensation in the District.

COUNCIL OF THE DISTRICT OF COLUMBIA, RE-PORT ON THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION EQUITY AMENDMENT ACT OF

1990, at 14–15 (1990). Subsection (a)(1) of the amended statute accomplishes the intended change by omitting the "principally localized" requirement for "[t]he injury or death of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia." In contrast, for "[t]he injury or death of an employee that occurs outside the District of Columbia," subsection (a)(2) preserves the pre–1991 statutory rule that there is coverage only "if, at the time of the injury or death, the employment is localized principally in the District of Columbia." See *supra* note 2. Under either subsection, it is necessary to ascertain the "time of injury" in order to determine if there is coverage under the Act.

On a literal reading, the hearing examiner's and Director's decisions conclude that because there was no "definitive date of injury," coverage of King's claim was governed by a statute no longer in effect, *i.e.*, § 36–303 as it existed prior to the 1991 amendments.[5] On the record of this case, that approach to the question of coverage of the WCA was plainly wrong. Neither the hearing examiner nor the Director explained why indefiniteness of the date of injury required them to evaluate King's claim under prior rather than current law, and—absent any finding that King knew or should have known prior to 1991 that he had a claim for an employment-related injury—we perceive no reason why it should. Nor, indeed, did resort to the pre–1991 law in lieu of current law obviate the need to fix a time of injury in order to determine coverage. By its express terms the former § 36–303(a) tied coverage to the principal locus of employment "at the time of . . . injury," see *supra* note 3, much as the current statute focuses on the time of injury.

The references to pre–1991 law in the agency decisions in this case may be misleading. The hearing examiner and the Director may have meant that where the injury is attributable to repeated work-related trauma occurring both inside and outside the District of Columbia over an extended period, the time (and hence also the place) of the injury is indefinite, and therefore subsection (a)(2) of current D.C.Code § 36–303 (which retains the "principally localized" requirement of prior law) governs the coverage question rather than subsection (a)(1). If so, that rationale overlooks the fact that under D.C.Code § 36–303(a), the question of coverage cannot be resolved without first determining the time (and place) of injury. It is necessary to make that determination in order to decide whether subsection (a)(1) or subsection (a)(2) governs coverage. (Moreover, if subsection (a)(2) governs coverage, it is also necessary to determine the time of injury for purposes of applying the "principally localized" test.) To say that the time of a cumulative trauma injury is "indefinite" does not automatically settle which subsection of § 36–303(a) governs coverage for such an injury where the employee suffered some of the trauma, and became disabled, while working in the District. Without having a rule for fixing the time of injury in such a case, we see no reason—and the hearing examiner and the Director offered none—why subsection (a)(2) rather than (a)(1) would necessarily apply to such a case.

 Thus, we conclude that to determine whether King's back injury was covered by the WCA, the hearing examiner was required to make findings as to the time (and, consequently, the place) and manner of that injury. This was a mixed question of law and fact, implicating as it does the etiology of King's injury and the

---

**5.** The opinion of the hearing examiner stated, "In that there is no definitive date of injury which would bring this matter within the ambit of the amended Act, the jurisdictional question herein is resolved pursuant to the pre-March 6, 1991 law." The Director's opinion stated that "the Hearing Examiner was correct in utilizing pre-existing legislation. . . . "

construction to be given the phrase "time of the injury" as it appears in § 36–303. As we explain below, on the record of this case, it was incumbent upon the hearing examiner (and the Director) to decide the matter as follows. Initially, the examiner should have determined (which he did not) whether King sustained a discrete work-related injury on April 11, 1994 (the date he stopped working) that aggravated a pre-existing back condition and thereby disabled him.[6] If so, then there is no uncertainty about the time or place of injury, and, under settled law, King's claim was covered under subsection (a)(1) of § 36–303. If, however, King did not sustain an aggravating injury on April 11, it was necessary for the hearing examiner to determine explicitly (which he did not do) whether King's back injury resulted from cumulative, work-related trauma, either alone or as a substantial contributing cause. If so, then King's claim was potentially covered because cumulative traumatic injuries are compensable under the WCA. In that event, to determine whether King's claim was in fact covered, the hearing examiner would have had to construe § 36–303(a) and articulate the rule for determining time of injury in a cumulative trauma case. Once the examiner answered that question, he would have had to apply the rule to the facts of this case to determine when (and where) King was injured and whether subsection (a)(1) or (a)(2) of § 36–303 governs coverage.

### Aggravation and Cumulative Trauma Injuries

■ "Injury" is defined in the WCA to mean "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an in-

jury caused by the willful act of third persons directed against an employee because of his employment." D.C.Code § 36–301(12). It is well settled that " 'an aggravation of a preexisting condition may constitute a compensable accidental injury under the Act.' " *Ferreira,* 531 A.2d at 660 (quoting *Wheatley,* 132 U.S.App. D.C. at 182, 407 F.2d at 312). "The fact that other, nonemployment related factors may also have contributed to, or additionally aggravated [claimant's] malady, does not affect his right to compensation under the 'aggravation rule.' " *Hensley v. Washington Metro. Area Transit Auth.,* 210 U.S.App. D .C. 151, 155, 655 F.2d 264, 268 (1981), *cert. denied,* 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982). " '[T]he cases almost invariably decide that the fact that the injury would not have resulted but for the pre-existing disease, or might just as well have been caused by a similar strain at home or at recreation, are both immaterial.' " *Id.* (quoting *Wheatley,* 132 U.S.App. D.C. at 182 n. 11, 407 F.2d at 312 n. 11). The aggravation rule is embodied in D.C.Code § 36–308(6)(A), which provides that "[i]f an employee receives an injury, which combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability ..."; *see also Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.,* 704 A.2d 295, 297–99 (D.C.1997) (discussing the policies underlying § 36–308(6)); *Daniel v. District of Columbia Dep't of Employment Servs.,* 673 A.2d 205, 207–08 (D.C.1996).

■ The difference between the typical case of a discrete accident causing an injury (including an aggravating injury)

---

**6.** Before the agency and in his brief to this court, King asserted that he sustained an aggravating injury on April 11. At oral argument before this court, his counsel seemingly withdrew that claim in favor of arguing that a cumulative, work-related back injury manifested itself to King on that date. As explained *supra,* the hearing examiner made no findings on either assertion.

and a cumulative trauma case is merely that in the latter case it is not possible to identify a discrete event occurring at a particular date and time that causes (or aggravates) the injury. Instead, the cumulative traumatic injury becomes manifest only after the body's repeated exposure to individually minor traumas, insults, or harmful employment-related conditions.[7] As with aggravating injury, it is settled that injury resulting from cumulative trauma in the workplace is compensable under the WCA. *See Ferreira,* 531 A.2d at 656–57; *Hamilton v. Giant Foods, Inc.,* H & AS No. 92–632A, OWC No. 228493, at 6 (February 28, 1994); *Hensley,* 210 U.S.App. D.C. at 157, 655 F.2d at 270; *Hoage v. Royal Indem. Co.,* 67 U.S.App. D.C. 142, 145, 90 F.2d 387, 390 (1937), *cert. denied,* 302 U.S. 736, 58 S.Ct. 122, 82 L.Ed. 569 (1937).

If King did suffer a discrete accident while at work on April 11, 1994, which injured and disabled him by aggravating his preexisting back condition, then he was entitled to coverage under the WCA. For in that event his compensable injury occurred in the District while he was performing work there for his employer in the District—thereby bringing his injury within the scope of subsection (a)(1) of D.C.Code § 36–303. This is so even if the accident aggravated a preexisting condition that was caused by repeated on-the-

job trauma.[8] *See* D.C.Code § 36–308(6)(A). Alternatively, if King's back gave out on April 11, 1994, not because of a distinct, identifiable accident on that date, but rather as the culmination of cumulative trauma to which his employment had exposed him over an extended duration, then his injury was potentially compensable under the WCA. In that case, on the present record, compensability would turn on when (and therefore where) King's injury is deemed to have occurred (a question we address below).

 The record evidence regarding what happened to King is sparse. Nonetheless, we think that King's testimony describing his back problems and his increased pain while working in the District on April 11, combined with the examiner's findings regarding the routine physical exertion involved in King's job, was sufficient to trigger the rebuttable presumption of coverage provided by D.C.Code § 36–321(1), based either on the premise of an aggravating injury at that time and place, or on the premise of cumulative work-related trauma culminating in disabling injury at that point. See *supra* note 1. To invoke the presumption, a claimant need only present some evidence of (1) a death or disability and (2) a work-related event which has the potential to result in or contribute to the death or disability. *See*

---

**7.** It is useful to distinguish between the terms "accident" and "injury." The D.C. Circuit has described the difference in this way: "'Accident' refers to the event causing the harm, 'injury' to the harmful physical (in some instances, psychological) consequences of that event which need not occur or become obvious simultaneously with the event." *Stancil v. Massey,* 141 U.S.App. D.C. 120, 122, 436 F.2d 274, 276 (1970). Thus, the "time of injury" is not necessarily the date on which a particular accident occurred.

**8.** *Cf. Currie v. Washington Hosp. Ctr.,* H & AS No. 93–441, OWC No. 246754 (June 12, 1995). In that case, the hearing examiner found that the claimant's employment as a nurse required her to "reach, push, pull, bend, and lift weights in excess of twenty-five pounds (25 lbs.)." The claimant suffered one

work-related injury to her back, recovered from that injury, but "intermittently complained of low back pain as a result of her employment duties ...." *Id.* Those complaints "increased in severity" and required her to return to her doctor, who determined that she was suffering from "degenerative arthritic changes of her low back and degenerative disc disease" among other problems. *Id.* Those symptoms abated, but another work incident in January 1993 caused her significant back pain, and the hearing examiner found that "claimant sustained an aggravation of her pre-existing degenerative disc disease" which "disabled her from performing in her usual employment." *Id.* at 3–4. The hearing examiner concluded that the January 1993 "aggravation is an injury for purposes of the Act ...." *Id.* at 7.

*Ferreira,* 531 A.2d at 655. Since King was performing work-related duties when his pain became disabling, he was entitled to the benefit of the presumption, "which operates to establish a causal connection between the disability and the work-related event, activity, or requirement." *Id.*

■ Once the presumption is triggered, the burden *shifts to the employer to* produce substantial evidence that the disability did not arise out of and in the course of the employment. See *Brown,* 700 A.2d at 791. "[D]oubts as to whether the injury arose out of the employment are resolved in the claimant's favor." *Baker v. District of Columbia Dep't of Employment Servs.,* 611 A.2d 548, 550 (D.C.1992).

Relying on testimony from one of King's physicians, intervenors argue that King did not suffer an aggravating injury on April 11 and did not sustain cumulative work-related trauma. Intervenors contend that King's injury was not work-related, but rather was the product of a natural degeneration of a back condition attributable to a previous, non-work-related injury. The hearing examiner did not resolve this dispute. He did not make any findings, from the medical testimony or otherwise, regarding the medical nature of King's back condition or the work-relatedness of King's disability. He did not determine whether the medical evidence regarding the source of King's disability was substantial enough to rebut the statutory presumption of coverage. He did not determine whether King suffered a discrete, aggravating injury on April 11, 1994, while at work in the District. Although the examiner assumed that King attributed his disability to a cumulative trauma, he did not determine for a fact whether King actually sustained such trauma from his job. The Director likewise did not make these determinations in reviewing the examiner's decision.

These fact-intensive determinations, essential to resolving the coverage question in this case, turn in large measure on the evaluation of the medical testimony and evidence. We do not have the authority to examine this evidence and make our own conclusions. See *Mack,* 651 A.2d at 806. That factual inquiry is the responsibility of the hearing examiner. We must remand to the agency to make findings on these issues.

*Cumulative Trauma and Time of Injury*

If on remand the examiner finds that King did not suffer an aggravating injury on April 11, 1994, but that he did become disabled on that date as the result of cumulative work-related trauma, then coverage depends on the rule that is selected for fixing the time of injury in such a case for purposes of D.C.Code § 36–303(a). We recognize that a specific time of injury may be difficult to pinpoint for a cumulative trauma injury; however, given the statutory language, it is necessary to develop a consistent approach to that issue.

In this and other jurisdictions, courts and agencies have confronted the issue of specifying the time of injury in various contexts. Different rules have been proposed and adopted, with the choice depending in large part on the policies to be served and the costs and benefits attendant on each alternative—which we consider a strong reason in favor of directing the agency to grapple with the matter and to articulate a rule in the first instance.

According to Professor Larson,

The practical problem of fixing a specific date for the accident has generally been handled by saying simply that the date of accident is the date on which disability manifests itself. Thus, in the *Ptak* [9] case, the date of a gradually acquired sacroiliac strain was deemed to be the first moment the pain made it impossible to continue work, and in the *Di*

---

**9.** *Ptak v. General Electric Co.,* 13 N.J.Super. 294, 80 A.2d 337, *aff'd,* 16 N.J.Super. 573, 85 A.2d 214 (1951).

*Maria* [10] case, the date of accident for gradual loss of use of the hands was held to be the date on which this development finally prevented claimant from performing his work. However, for certain purposes the date of accident may be identified with the onset of pain occasioning medical attention, although the effect of the pain may have been merely to cause difficulty in working and not complete inability to work.

A. LARSON, 3 LARSON'S WORKERS' COMPENSATION LAW, § 50.05, at 50–9–10 (1999) (footnotes omitted). King argues that the time of injury in a cumulative trauma case should be fixed in accordance with the so-called "manifestation rule." There is case support for King's argument in this jurisdiction, though the precise question presented in this case has not been settled.[11] Moreover, as the quoted passage reveals, there is no single "manifestation" rule; rather, there are several variant rules.

The Department of Employment Services utilized a manifestation rule in at least one cumulative traumatic injury case prior to the 1991 amendment of D.C.Code § 36–303. In *Franklin v. Blake Realty Co.*, H & AS No. 84–26, OWC No. 25856 (August 18, 1985), the claimant had sustained a cumulative traumatic injury to her shoulder and arm during June 1983, but that injury did not manifest itself in debilitating pain and discomfort until some time in July 1983. The employer had changed insurance carriers at the end of June, and so one of the issues in the case was which carrier was liable on the claim. That dispute turned on whether the date of injury was considered to be before or after the employer switched carriers. For this purpose the Director "conclude[d] that the date of injury for a cumulative traumatic injury is the date on which the *injury* manifests itself. The date on which the injury manifests itself is (1) the date on which employee first sought medical attention for his painful symptoms, whether or not he ceased work or (2) the date of disability, whichever first occurred." *Id.* at 4.[12]

A few years later, in a case involving an occupational disease (hearing loss) caused by long-term exposure to noisy machinery, this court held that where the exposure occurred before the effective date of the WCA, but the employee did not become aware of the injury and its job-relatedness until after that date, the injury is presumptively covered by the WCA rather than by the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *Ra-*

---

10. *Di Maria v. Curtiss Wright Corp.*, 23 N.J. Misc. 374, 44 A.2d 688 (1945), *rev'd on other grounds*, 134 N.J.L. 524, 49 A.2d 243 (1946), *aff'd*, 135 N.J.L. 470, 52 A.2d 698 (1947).

11. The "time of injury" question is similar to the question of when the time begins to run for an injured employee to give notice or file a claim. The WCA addresses this latter question by explicitly adopting a "discovery" rule in D.C.Code §§ 36–313 and –314. Those sections provide that the time for giving notice or filing a claim does not begin to run until the employee is aware, or by the exercise of reasonable diligence should have been aware, of a relationship between the injury and the employment. This discovery rule is a form of "manifestation" rule. This court has addressed the operation of the discovery rule under §§ 36–313 and –314 in cases involving cumulative trauma injuries, *see Jimenez v. District of Columbia Dep't of Employment Servs.*, 701 A.2d 837 (D.C.1997), and *KOH*

*Sys. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 446 (D.C.1996). We did not reach the separate question implicit in those cases of the time of injury itself.

12. The Director emphasized that the manifestation rule that he adopted was a variant of the rule, used in most jurisdictions, fixing the date of injury solely as the date on which *the disability* manifests itself:

"[T]he fact that the employee continued working after medical attention does not negate the fact of the employee's injury, whatever the degree of impairment.... In many instances an employee will seek medical attention for a diagnosable injury long before he ceases working. I see no rationale for setting the date of the injury coincidentally with the date of disability when it is apparent to the employee and doctor that the employee has suffered an injury requiring medical attention."

*Franklin, supra*, at 4 & n. 2.

ilco Multi–Construction Co. v. Gardner, 564 A.2d 1167, 1168 (D.C.1989).[13] Thus, the court adopted a rule that the time of injury is normally deemed to be when the employee is first aware of the injury and its relationship to the employment. In its focus on the extent of the employee's awareness, this is a different "manifestation" rule from the rule that the Director announced in Franklin (which did not concern itself with the employee's state of mind). Our opinion in Railco cited Franklin as having previously adopted the manifestation rule for cumulative traumatic injury, without, however, remarking on the difference in the content of the Franklin rule. Railco, 564 A.2d at 1174 n. 21.

The Railco court adopted its version of a manifestation rule with a significant qualification. The court realized that (former) D.C.Code § 36–303 limited the jurisdiction of the WCA to cases in which, at the time of the injury, the employment was principally located in the District of Columbia. Some workers whose injuries did not become manifest until after the WCA took effect might be deprived of coverage entirely if the principal locus of their employment was outside the District at that time. To avoid a total loss of coverage, the court held that in such cases, if coverage would also be unavailable under any other state statute, the LHWCA would continue to apply. Railco, 564 A.2d at 1176.

Although Franklin and Railco adopted a manifestation rule in one form or another for the purposes of choosing between two insurers or two statutory schemes, we do not think they definitively resolve the question presented in this case of how to fix the time of a cumulative traumatic injury for purposes of determining under D.C.Code § 36–303(a) whether the injury occurred in the District or outside the District. Neither Franklin nor Railco addressed that specific question. Both cases

preceded the 1991 amendment of § 36–303(a), and hence did not purport to construe the precise statutory language now before us. Moreover, the court did not explain in Railco why its formulation of the manifestation rule differed from the agency's formulation in Franklin. Indeed, the court took no notice of the difference. For these reasons alone we would hesitate to treat Franklin or Railco as having decided the time of injury issue that is presented in the case now before us. Moreover, the issue addressed in Railco was a narrow one. Railco answered the specific question of which statute should apply where the claimant was last exposed to the harm that caused his occupational disease prior to the effective date of a new statute but the disease was not manifest until after that statute went into effect. In choosing a manifestation rule to answer that question, the court did not necessarily consider all the implications of such a rule in other factual contexts. We are not convinced, for example, that Railco necessarily would foreclose coverage under the WCA where the disease was manifest prior to the effective date of that Act but the last exposure occurred after that date. D.C.Code § 36–310 specifically provides that in the case of occupational diseases, "liability for compensation rests with the employer of the last known exposure." This statutory provision would seem to imply that where the last exposure to a harmful working condition occurred after the effective date of the Act, the occupational disease should be covered by the Act even if that disease began manifesting itself before the Act took effect.

This latter possibility, which is not addressed in Railco, illustrates why it is appropriate that we not read the holding of that case too broadly. In cases such as Railco, involving a long period of latency between exposure to harmful working conditions and the manifestation of the result-

---

**13.** Prior to the effective date in July 1982 of the 1979 WCA, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. (1982), furnished the statutory scheme

of workers' compensation for private sector employees in the District of Columbia. See Railco, 564 A.2d at 1168 n. 4, 1170–71.

ing disease or injury, a manifestation rule serves the beneficent purposes of the WCA. *See Railco,* 564 A.2d at 1172–73 (quoting, *inter alia,* Judge Learned Hand's observation in *Grain Handling Co. v. Sweeney,* 102 F.2d 464, 466 (2d Cir.), *cert. denied,* 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939), that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself."). But it is arguable that in other cases, such as where a cumulative traumatic injury becomes manifest long before it becomes totally disabling, and the employee continues to work in the interim, alternatives to the manifestation rule would better fulfill the goals of the WCA.

The potential drawbacks to a manifestation rule in such cases have persuaded courts in some other jurisdictions to adopt alternative rules for specifying the time of injury in cumulative trauma cases. The most common alternatives are the "last exposure" rule and the "last day worked" rule. *See, e.g., Lawson v. Lear Seating Corp.,* 944 S.W.2d 340, 342 (Tenn.1997); *Berry v. Boeing Military Airplanes,* 20 Kan.App.2d 220, 885 P.2d 1261, 1267–68 (1994); *McKeever Custom Cabinets and Lumberman's Mut. Cas. Co. v. Smith,* 379 N.W.2d 368, 374–75 (Iowa 1985); *Fidelity Mut. Life Ins. Co. v. Workmen's Compensation Appeal Bd.,* 126 Pa.Cmwlth. 188, 559 A.2d 84 (1989); LARSON'S WORKERS' COMPENSATION, § 50.05, at 50–9–10. These cases fix the time of injury on the date when the employee is last exposed to the trauma or is last able to work. For instance, the courts in *Lawson* and *Berry* adopted a "last day of work" rule fixing the date of injury in cases of carpal tunnel syndrome caused by repetitive stress over a long period of time. Those courts reasoned as follows:

> [I]f we were to adopt either the date on which the injury "manifests itself" or the date on which the injury is "diagnosed," we would set a potential trap for the individual who, despite pain and discomfort, continues to work long after his or her carpal tunnel is "diagnosed" or has "manifested itself." ... It seems to us that we should adopt the rule that causes the least potential prejudice and upholds the spirit of our Workers Compensation Act. We believe use of the last day of work accomplishes both of those purposes.

*Lawson,* 944 S.W.2d at 342 (quoting *Berry,* 885 P.2d at 1267–68). *See also Oscar Mayer & Co. v. Industrial Comm'n,* 176 Ill.App.3d 607, 126 Ill.Dec. 41, 531 N.E.2d 174, 176 (1988) ("By their very nature, repetitive-trauma injuries may take years to develop to a point of severity precluding the employee from performing in the workplace. An employee who discovers the onset of symptoms and their relationship to the employment, but continues to work faithfully for a number of years without significant medical complications or lost working time, may well be prejudiced if the actual breakdown of the physical structure occurs beyond the period of limitation set by statute.").

Adoption of a manifestation rule may have other drawbacks that might be weighed against its undoubted benefits. The rule that this court approved in *Railco* requires an evidentiary inquiry to determine when the employee first knew (or perhaps should have known—a point not clearly addressed in *Railco* ) of the work-relatedness of her injury. For example, on remand in this case, if the hearing examiner finds that King sustained a work-related, cumulative traumatic injury to his back, adoption of a *Railco* manifestation rule will require the examiner to determine when King first knew (or should have known) that his job was causing him back pain. The need to pursue such a potentially time consuming and difficult factual inquiry might well be thought a disadvantage of the manifestation rule.

We make no judgment about the wisdom of adopting any particular time of injury rule with respect to the issue in this case. The choice of rule implicates many consid-

erations bearing on the implementation of the WCA. The agency charged with administering the Act should make that choice in the first instance, after carefully analyzing the precedents discussed above—which, in this jurisdiction, plainly support, if they do not compel, adoption of some version of a manifestation rule—and the language, structure and purpose of the statute. *See Mushroom Transp.*, 698 A.2d at 433.

## IV.

On remand, the Department of Employment Services should make the necessary findings of fact and conclusions of law consistent with the foregoing discussion. To summarize, the agency might approach its analysis through consideration of the following questions (though the agency is not confined to or bound by this framework):

(1) Did King sustain a discrete injury on April 11, 1994, which aggravated his preexisting condition?

(2) If King did not sustain a discrete injury on April 11, 1994, did King's disability result from cumulative or gradual trauma related to his work?

(3) In a case of a cumulative injury, how is the time of injury determined for purposes of D.C.Code § 36–303(a)? In other words, what rule should the agency and courts follow in finding a time of injury?

(4) What was the time of injury in King's case? For example, if the time of injury was when King first became aware that his back pain was related to his job, when did that happen?

(5) Based on the time of injury, where did King's injury occur? Is coverage determined under subsection (a)(1) of D.C.Code § 36–303 (because the injury occurred in the District of Columbia) or under subsection (a)(2) (because the injury occurred outside the District)?

(6) If coverage is determined under subsection (a)(2), where was King's employment principally localized at the time of injury? As to this last question, we note that King has not challenged the examiner's application of the three-part *Hughes* test to the facts of his employment, except for the examiner's failure to determine the principal locus of his employment specifically with respect to the time of injury.

We leave it to the agency's discretion whether further testimony or evidence is necessary to enable it to address these questions.

The decisions of the Director and the hearing examiner are hereby *reversed,* and the case is *remanded* for further proceedings not inconsistent with this opinion.