**Donald POOLE, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

**and**

**Benedict Metal Works, et al., Intervenors.**

**No. 12–AA–1300.**

District of Columbia Court of Appeals.

Submitted April 23, 2013.
Decided Oct. 10, 2013.

---

**34.** Oral argument in AFSCME was heard the same day as oral argument in this case. It is awaiting decision.

Mark L. Schaffer, Washington, DC, for petitioner.

Irvin B. Nathan, Attorney General for the District of Columbia, with whom Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, filed a statement in lieu of a brief, for respondent, standing on the decision of the Compensation Review Board.

Joel E. Ogden, Baltimore, MD, for intervenors.

Before BECKWITH and McLEESE, Associate Judges, and RUIZ, Senior Judge.

RUIZ, Senior Judge:

On May 10, 2010, petitioner, Donald Poole, injured his right shoulder during the course of his employment with intervenor, Benedict Metal Works ("employer"). Petitioner did not seek immediate medical attention, but as his pain increased over the course of two months, he sought professional treatment. Upon being told that he had a serious injury traceable to the work accident, petitioner promptly notified his employer of the work injury on July 13, 2010. Petitioner filed a claim for total temporary disability benefits from December 30, 2010, when his employment was terminated, to the present and continuing, and causally related medical expenses, which the employer challenged. After a formal hearing, Administrative Law Judge ("ALJ") Nata K. Brown granted petitioner's claim in its entirety. The employer appealed, and on July 25, 2012, the Compensation Review Board ("CRB") affirmed the award of causally related medical expenses, but vacated the award of temporary total disability on the ground that petitioner had not timely notified the employer of his injury. On August 7, 2012, petitioner filed a petition for judicial review. We reverse the decision of the CRB and re-instate the ALJ's award of temporary total disability.

## I.

On May 10, 2010, petitioner, who worked as a project manager, and a colleague were at a customer site to install a sheet metal "feature wall." They used a 32–foot extension ladder that weighed approximately 80 pounds. While they were moving the ladder down two steps, petitioner's colleague lost his balance, nearly falling off the steps, and petitioner reached out to prevent the ladder from toppling. Petitioner's "whole body was pulled" in making this effort, and he instantly felt "a burning pain" and "a pulling sensation" in his right shoulder and neck. After a short break, however, the two resumed working and finished the installation.

Petitioner did not seek immediate medical attention, and he continued to work as before. But as the pain in his right shoulder increased in the weeks following the accident, on July 6, 2010, petitioner saw Dr. Andrew L. Tislau, a chiropractor. Dr. Tislau ordered an X-ray, which showed nothing was broken, and physical therapy. When petitioner's condition did not improve with the physical therapy, Dr. Tislau told petitioner that his pain was likely from an injury, and ordered an MRI. The MRI showed a tear in the right rotator cuff, and Dr. Tislau referred petitioner to Dr. Thomas Brandon, an orthopedic surgeon and shoulder specialist. On July 13, 2010, petitioner returned to work with certain restrictions from Dr. Tislau,[1] and he reported his injury and the May 10 work-

1. Dr. Tislau "restricted Claimant to no overhead reaching, no lifting more than five pounds with the right shoulder, and no use of the right shoulder muscles that would cause pain."

place accident to his employer. Dr. Brandon examined petitioner on July 26, 2010, and continued to restrict his activities.[2] On August 24, 2010, Dr. Brandon advised petitioner not to work until his surgery. During that time, petitioner was able to do some work from home.

Dr. Brandon performed surgery on the rotator cuff tear on September 3, 2010. At a surgery follow-up appointment on September 9, 2010, Dr. Brandon advised that petitioner should not work for one month. Petitioner's pain persisted, and, at further visits on October 7, 2010, and November 16, 2010, Dr. Brandon instructed that petitioner not return to work for six additional weeks.[3] On December 21, 2010, Dr. Brandon ordered a repeat MRI and continued to advise petitioner not to report to work. The employer terminated petitioner on December 30, 2010, stating that, because petitioner had not returned to work, it was assumed "he had abandoned his position and quit." Petitioner filed a claim for total temporary disability benefits from December 30, 2010, and medical expenses related to the workplace injury.

After a formal hearing, the ALJ found that petitioner had given timely notice of his injury to the employer because he "did not know, within the first thirty days after the accident, that he had a compensable injury." The ALJ distinguished between the "accident" and the "injury," and considered it significant that at the time of the incident with the ladder, petitioner "did not know the extent of the injury." The ALJ determined it was sufficient that petitioner reported the injury on July 13, with-

in 30 days of receiving Dr. Tislau's diagnosis, on July 6, "that his injury probably arose from an accident," and becoming aware of "a relationship between the accident with the ladder and his injury." The ALJ awarded temporary total disability benefits due to petitioner's continued inability to work as a result of the work-related injury.[4]

On administrative appeal, the CRB vacated the award of temporary total disability benefits because it found that the ALJ "was in error in inserting the requirement that the 30–day notice provision was not triggered until the claimant knew of the *extent* of his injury." The CRB found that it was clear that petitioner "was aware of the relationship between the injury of May 10, 2010[,] and his employment" based on his testimony at the hearing "that he felt pain and a pulling sensation when he attempted to catch the ladder," and thus, "notice had to be given to the Employer on or before June 9, 2010[,] to be timely." We reverse this determination and remand for reinstatement of the ALJ's award of disability compensation.

## II.

We review a decision of the CRB using the substantial evidence standard. "We must determine first, whether the agency has made a finding of fact on each material contested issue of fact; second, whether the agency's findings are supported by substantial evidence on the record as a whole; and third, whether the Board's conclusions flow rationally from those find-

---

2. Dr. Brandon also restricted petitioner to "lifting no more than 5 pounds, and no reaching overhead."

3. Petitioner continued to experience shoulder pain that radiated into his neck, and numbness in both arms. Dr. Scott McGovern, a specialist in the cervical spine, diagnosed a

disk herniation that was causally related to the work injury.

4. The ALJ also awarded relief for related medical expenses. This award was confirmed by the CRB and is not challenged in this appeal.

ings and comport with the applicable law." *Wash. Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 926 A.2d 140, 146–47 (D.C.2007) (internal quotation marks and citations omitted). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 667 A.2d 310, 312 (D.C.1995) (internal quotation marks and citation omitted). "In a workers' compensation case, we review the decision of the Board, not that of the ALJ. In doing so, however, we cannot ignore the compensation order which is the subject of the Board's review." *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C.2007) (citation omitted).

"Questions of law, however, are reviewed *de novo.*" *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1196 (D.C.2008) (en banc) (citation omitted). "[A]n agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court." *King v. District of Columbia Dep't of Emp't Servs.*, 742 A.2d 460, 466 (D.C.1999) (internal quotation marks and citation omitted). However, "[w]hen the agency's decision is inconsistent with the applicable statute ... we owe it far less deference, if indeed we owe it any deference at all." *Id.* (internal quotation marks and citation omitted).

This appeal turns on interpretation of a provision of the District of Columbia Workers' Compensation Act, which requires notice to the employer of any injury for which disability compensation is sought.

> Notice of any *injury ... in respect of which compensation is payable* under this chapter shall be given within 30 days after the date of *such injury ...* or 30 days after the employee ... is aware or in the exercise of reasonable diligence should have been aware of a *relationship between the injury ... and the employment.*

D.C.Code § 32–1513(a) (2001) (emphasis added).[5] Compliance with this notice requirement is mandatory; failure to comply, unless excused under the statute, *see id.* (d), will lead to dismissal of a claim for disability compensation.[6] *See Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 960 A.2d 603, 607 (D.C. 2008).

Before this court, petitioner argues that the CRB erred in vacating the compensation award because it incorrectly equated the time of the accident with the event that triggers the obligation to notify the employer of a work-related injury, in contravention of this court's cases that distinguish between an "accident" and an "injury" for purposes of the D.C. Workers' Compensation Act. Petitioner argues that it was not possible to know he had been injured, i.e., that he had suffered a torn rotator cuff that would impair his ability to

---

**5.** In addition to the provision requiring 30-day notice to the employer, the Act generally requires that claims for compensation be filed within one year of the injury or the last payment made by the employer. D.C.Code § 32–1514 (2001).

**6.** The Workers' Compensation Act also provides for payment of medical expenses that are related to the injury from a work accident. *See* D.C.Code § 32–1507 (2001) (refer-

ring to expenses required by "the nature of the injury or the process of recovery"). A claim for such medical expenses is not considered "compensation" under the statute, and therefore is not conditioned on the employee's compliance with the notice provision. *See Safeway Stores, Inc. v. District of Columbia Dep't of Emp't Servs.*, 832 A.2d 1267, 1269–71 (D.C.2003).

work at the time of the incident with the ladder, and that he gave timely notice to the employer promptly after he was informed of the injury by a physician. Petitioner also argues that the employer failed to show that it was prejudiced by the 2–month lapse of time between the work accident and notice of his compensable injury. The employer counters that in the case of a single, acute injury, the notice period begins to run when the work accident occurs and should not be tolled simply because the employee is unaware of the full extent of an injury.

 It appears that there is no controlling authority that governs the facts of this case. We have commented, however, that the notice provision operates on principles of a "discovery rule," and, in doing so, we have distinguished between an "accident" and "injury," consistent with the District of Columbia Circuit's interpretation of the Longshoremen's and Harbor Workers' Compensation Act, on which the D.C. Workers' Compensation Act (WCA) is modeled.[7] *King*, 742 A.2d at 469 n. 7, 471 n. 11. " 'Accident' refers to the event causing the harm, 'injury' to the harmful physical . . . consequences of that event which need not occur or become obvious simultaneously with the event." *Id.* at 469 n. 7 (quoting *Stancil v. Massey*, 436 F.2d 274, 276 (C.A.D.C.1970)).[8] *King* involved cumulative injury to the back, and we noted that, unlike in the "typical case of a discrete accident causing an injury," in a "cumulative trauma case" it "is not possible to identify a discrete event" that caused the injury. *Id.* at 468–69. As a result, we remanded the case so that the agency could determine, in the first instance, the "time of injury" for purposes of determining where it occurred—which, in turn, would decide whether the WCA applied—consistent with the "language, structure and purpose of the statute." *Id.* at 473–74.[9] In *Jimenez v. District of Columbia Dep't of Emp't Servs.*, 701 A.2d 837, 838 (D.C.1997), where the claimant had a "cumulative traumatic injury," we remanded the proceeding for the agency to determine whether the claimant's failure to give timely notice should be excused under D.C.Code § 32–1513(b). *Id.* at 841.

Neither *King* nor *Jimenez*, however, resolved the issue presented in this appeal: When does the 30–day notice period in D.C.Code § 32–1513(a) begin to run? Specifically, we have not considered whether the distinction between "accident" and "injury" is also significant, where there has been a discrete work incident, with respect to the notice requirement. We owe little, if any, deference to the CRB's conclusory statement, without conducting "any analysis of the language, structure, or purpose of the statutory provision," that the distinction between accident and injury has no application to this case because it did not involve cumulative

7. Prior to the enactment of the Workers' Compensation Act, the Longshoremen's and Harbor Workers' Compensation Act was the statutory basis for workers' compensation in this jurisdiction. *Howard Univ. Hosp./Prop. & Cas. Guarantee Fund v. District of Columbia Dep't of Emp't Servs.*, 952 A.2d 168, 177 n. 6 (D.C.2008) (citation omitted). In interpreting parallel provisions in the D.C. Workers' Compensation Act, "[w]e have accorded great weight to decisions of the United States Court of Appeals construing the federal statute." *Id.; see, e.g., King*, 742 A.2d at 469 n. 7.

8. The issue in *Stancil* was whether a claim filed more than four years after the workplace accident was timely filed within the one-year statute of limitations, which began to run from the time of "injury." The D.C. Circuit held the claim was timely.

9. The issue of compensability in *King* "turn[ed] on when (and therefore where) King's injury is deemed to have occurred." 742 A.2d at 469.

injury.[10] *See District of Columbia Office of Human Rights v. District of Columbia Dep't of Corrections,* 40 A.3d 917, 925 (D.C.2012) (quoting *Proctor v. District of Columbia Dep't of Emp't Servs.,* 737 A.2d 534, 538 (D.C.1999)). We hold that the distinction does apply in the context of the notice requirement.

 We begin with the language of the statute. According to the leading commentator on workers' compensation law, statutes generally adopt either "accident" or "injury" as the trigger for requiring notice of a potential worker's compensation claim. 7 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 126.06[1], [2] (Rev. ed.2007). Our statute not only uses "injury" language, but also refers specifically to "injury ... in respect of which compensation is payable" under the Act. D.C.Code § 32–1513(a). This means that "the claim period runs from the time compensable injury becomes apparent." LARSON, *supra,* at § 126.06[1]. To be "compensable," an injury must result in "disability," which we have often said is primarily an economic—not medical—concept that encompasses "any incapacity arising from a work-related injury that results in lost wages." *Wash. Metro. Area Transit Auth.,* 926 A.2d at 149 n. 12; *see Stancil,* 436 F.2d at 276 n. 4 (" 'Disability' ... is a medico-economic term, meaning actual incapacity because of injury to earn the wages which the claimant was receiving."). Disability compensation is meant to address that partial or total loss, temporary or permanent, in earning capacity. *See Howard Univ. Hosp./Prop. & Cas. Guarantee Fund,* 952 A.2d at 176. Thus, an injury "in respect of which compensation is payable" under the Act, D.C.Code § 32–1513(a), of which the claimant must give notice to the employer, is an injury that is (or at least is capable of becoming) disabling in the economic sense.[11] The statutory language of the notice requirement therefore indicates that the 30–day notice period is triggered when the employee is or should have been aware that an impairment (physical or psychological) may be compensable because it is likely to result in loss of wages. *Cf. Stancil,* 436 F.2d at 279 (formulating the question as whether employee "reasonably believed" he had—or had not—"suffered a work-related harm which would probably diminish his capacity to earn his living"). This awareness will usually come about because of an actual inability or impaired ability to perform usual work duties, from the nature of the trauma sustained, or on advice from a physician. In many cases where there is a discrete incident in the workplace, the severity of the trauma might suffice to make

---

10. The CRB disagreed with the ALJ solely on the ground that this was not a case of cumulative injury, as was *King:*

> [I]t seems that the ALJ may have conflated the notice requirement in [this case] where a distinct injury occurred with the special circumstances involving cumulative trauma injuries. In any event, the ALJ was in error in inserting the requirement that the 30 day notice provision was not triggered until the claimant knew of the *extent* of his injury, rather than when the claimant was aware of the relationship between his injury and the work accident on May 10, 2010.
> It is clear that the claimant was aware of the relationship between the injury of May 10, 2010 and his employment based upon his testimony at the hearing that he felt pain and a pulling sensation when he attempted to catch the ladder. This evidence and his affirmative response to the question of whether or not he knew there was a relationship between the injury and the May 10, 2010 accident began the 30 day notice requirement on the date of injury. CRB Order at 4 (footnotes omitted).

11. Thus, in worker's compensation cases the terms "compensable" and "disabling" are sometimes used interchangeably. *See, e.g., Safeway Stores, Inc.,* 832 A.2d at 1269–71.

the fact or likelihood of compensable injury apparent to the employee. The presence of momentary pain or discomfort, however, does not necessarily indicate the presence of an underlying disabling impairment and will not always trigger the requirement to give notice of injury that is compensable, particularly where the employee is able to continue to work as before. *See generally Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136–37 (Del. 2006) (discussing a conflict in medical evidence and noting that "evidence of pain without loss of use is not a compensable permanent impairment").

■ In interpreting the statutory language requiring notice to the employer within 30 days of the "injury ... in respect of which compensation is payable," we take note that the statute requires that the employee reasonably be aware of an injury that is compensable because of its disabling nature *and* its work-relatedness. Thus, the statute makes clear that the 30 days do not begin to run until the employee "is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury ... and the employment." D.C.Code § 32–1513(a). The latter provision allows additional time for situations where the employee knows he or she has a disabling injury but the nexus between the injury and a work accident is not immediately evident. *See King*, 742 A.2d at 469 n. 7. In this case, we need not rely on the provision allowing additional time, as we hold that petitioner gave notice within thirty days of knowing he was "injured," i.e., when he became aware that his shoulder had been seriously hurt, as a result of a workplace accident. Here, that occurred when Dr. Tislau informed petitioner that his pain was likely from trauma and advised him to curtail his activities at work.

In addition to its foundation in the text of the statute, our interpretation is consistent with the two-fold purpose of the notice provision: "First to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." *Howrey & Simon v. District of Columbia Dep't of Emp't Servs.*, 531 A.2d 254, 257 (D.C.1987) (quoting A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 78.10 at 15–81 (1983)). Thus, in excusing an employee's failure to give timely notice, we have recognized that "[a]ccidents which appear minor at the time they occur may result in greater injury than anticipated." *Id.* at 258.

■ Our interpretation of the notice provision also comports with the remedial purposes of the Act. "[W]orkers' compensation statutes should be liberally construed to achieve their humanitarian purpose." *Howard Univ. Hosp./Prop. & Cas. Guarantee Fund*, 952 A.2d at 173 (internal quotation marks and citation omitted); *see Stancil*, 436 F.2d at 276 (noting that the Longshoremen's and Harbor Workers' Compensation Act "is to be construed with a view to its beneficent purposes and that doubts are to be resolved in favor of the employee"). As the D.C. Circuit has observed, "the canon of liberal construction" thus "instructs that 'injury' should encompass physical harm of a kind which is unknown to the employee at the time of the accident but which is later revealed, such as an occupational disease or latent wound." *Stancil*, 436 F.2d at 277. Larson agrees, noting that "[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of his or her injury." LARSON, supra, at

§ 126.05[1]. As a matter of policy, in imposing notice and filing obligations on claimants, threshold recognition of the seriousness of an injury is "a salutary requirement, since any other rule would force employees to rush in with claims for every minor ache, pain, or symptom." *Id.* § 126.05[5]. This is not to say that an employee may defer notice until the full nature and extent of the injury is known, but that the fact of injury potentially compensable must be reasonably appreciable. In this case, petitioner's notice within days of his becoming aware that he had sustained an injury capable of impacting his work duties gave the employer ample time to provide treatment to minimize the seriousness of the injury, and facilitate investigation of the facts surrounding the injury, thus satisfying the dual purposes of the notice requirement.

■ In light of our interpretation of the statute, we hold that petitioner gave timely notice of his "injury . . . in respect of which compensation is payable" because he reported it within thirty days of when he reasonably became aware of its severity, its consequent capacity to affect his work performance, and its link to the workplace accident. Although petitioner felt a sharp pain in his shoulder at the time of the accident on May 10, after taking a short break, he was able to continue working that day and during the coming weeks. As the pain in his shoulder increased, however, he saw a chiropractor on July 6, 2010, who ordered an X-ray and physical therapy, and informed petitioner that the pain was likely from an injury. Putting two and two together, petitioner reported the workplace incident to his employer at his next work day, July 13, 2010. This sequence of events supports the ALJ's determination that petitioner was unaware that the momentary act of grabbing a ladder to prevent its fall would lead to a compensable injury, and that, once he understood that his shoulder had been seriously injured and its likely cause, he acted promptly to inform his employer.[12]

Accordingly, for the foregoing reasons, we reverse in part the order of the Compensation Review Board and remand the case for reinstatement of the ALJ's award of temporary disability benefits.

*So ordered.*

■

12. The employer argues that, in this case, the only reason that petitioner did not seek medical attention sooner was that he did not have time to do so, not because he was unaware of his injury. The ALJ commented that petitioner "did not seek medical attention immediately because he had work to do and was working ten hours per day; however, the pain increased in the following days." The ALJ found, however, that the "[c]laimant did not know, within the first thirty days after the accident, that he had a compensable injury.". According to the ALJ, petitioner did not know until July 6, 2010, when Dr. Tislau advised him, that his continuing pain probably arose from an injury, and petitioner connected the accident at work with his injury. On this factual question, we must credit the finding of the ALJ. "The ALJ, who heard the testimony and saw [petitioner] testify in the case, was in the best position to make these credibility determinations and the factual finding at issue here." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 862 A.2d 387, 393 (D.C.2004) (citation omitted). Just as the court is required to defer to the ALJ's factual finding, so must the CRB. *See Wash. Metro. Area Transit Auth.*, 926 A.2d at 147 ("The [CRB] may not consider the evidence *de novo* and make factual findings different from those of the [ALJ]." (internal quotation marks and citation omitted)). "Since the ALJ's factual finding is supported by substantial evidence in the record, the [CRB] was bound by it, even if [it] might have reached a different result based on an independent review of the record." *Georgetown Univ.*, 862 A.2d at 393 (citation omitted).