*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-700

SYLVIA BROWN-CARSON, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

FILED 05/04/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

On Petition for Review of a Final Order
of the Compensation Review Board
(CRB-10-15)

(Argued December 15, 2016                    Decided May 4, 2017)

*Jonathan H. Levy*, Legal Aid Society, with whom *Becket Marum*, Legal Aid Society, was on the brief, for petitioner.

*Jason Lederstein*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent.

Before THOMPSON and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: Petitioner appeals from a decision of the Compensation Review Board (CRB) vacating a compensation order by an administrative law judge (ALJ), who ruled that notice of petitioner's workers' compensation claim (as well as the claim itself) had been timely and awarded her

compensation for temporary total disability (carpal tunnel syndrome). We reverse and remand to the CRB for a decision consistent with this opinion.

**I.**

Petitioner worked for the District of Columbia for twenty-five years before filing a claim for workers' compensation. From 1987 to 1993, she fielded 911 calls for the Metropolitan Police Department (MPD) — a position in which she answered a high volume of emergency calls and typed information into a dispatch system for police, fire, and emergency services.

During a "routine checkup" through her health plan in 1992, petitioner was diagnosed with carpal tunnel syndrome and was advised to wear a wrist splint. The following year, she was detailed to a payroll position that required less typing. Petitioner continued to suffer from intermittent pain in her left wrist, a condition she treated herself with over-the-counter pain medication in addition to the recommended wrist splint. She remained in the payroll position through 2004, when she resumed her work as a 911 call operator.

After eight more years of processing emergency calls, petitioner felt extreme pain in her left wrist while typing on March 28, 2012.  On April 3, 2012, she notified her supervisor and filed a claim for worker's compensation benefits under the Comprehensive Merit Personnel Act (CMPA).[1]  Three days later, her employer sent her to an urgent care center, where Dr. Anthony McCarthy noted her history of carpal tunnel syndrome, and advised her to cease use of her left hand.  Because of this restriction, petitioner's employer informed her that she could no longer work.  Prescription medication and a wrist injection did not cure the numbness, tingling, and pain.

On May 17, 2012, a medical exam by Dr. Steven Friedman, an orthopedist designated by petitioner's employer, appeared to confirm petitioner's earlier carpal tunnel diagnosis,[2] although he noted that her condition was primarily due to diabetes, initially diagnosed in 1998, and that she could return to work with less typing and frequent breaks.  Another physical exam by rheumatologist Dr. Nora

_____

[1] D.C. Code § 1-623 *et seq.* (2012 Repl.).

[2] Dr. Friedman's nerve conduction study did not corroborate the carpal tunnel diagnosis, but he noted that "[i]t is well-documented in the electrodiagnostic literature that up to 20% of patients with normal EMG/nerve conduction studies can have clinically significant carpal tunnel syndrome."  He further observed:  "I do believe that Ms. Brown-Carson has significant clinical evidence of carpal tunnel syndrome based on my clinical evaluation."

Taylor, to whom petitioner was referred at the request of her employer, suggested that petitioner was "suffering from an inflammatory arthritis of some kind." Based on this report, but without access to the full panel of blood test results, Dr. Friedman noted in an addendum his "concern[]" that petitioner's condition was not work-related but rather the result of an underlying inflammatory condition. Accordingly, the Public Sector Workers' Compensation Program denied petitioner's claim on September 21, 2012.

Petitioner requested an administrative hearing, which took place on February 6, 2013, before ALJ Joan E. Knight. Petitioner maintained that her disability was work-related and that notice to her employer had been timely. Her employer answered that petitioner had failed to show by a preponderance of the evidence that her carpal tunnel syndrome was related to her work. The agency further argued that petitioner's injury had occurred at the latest in 1993, after she had been diagnosed with carpal tunnel syndrome and realized it was causally related to her work — meaning that petitioner had missed the statutory thirty-day period required for notice of the injury to her employer.[3] Knight reviewed the evidence of

_____

[3] D.C. Code § 1-623.19 (a)(1) ("An employee injured in the performance of his or her duty . . . shall give notice thereof [to the employer]. . . . A notice of injury . . . shall . . . [b]e given within 30 days after the injury . . . .").

petitioner's medical history, including an assessment by Dr. Rida Azer, petitioner's treating physician. First, crediting Dr. Azer's assessment of causality over Dr. Friedman's, who had stated that petitioner's "left carpal tunnel [was] primarily non-occupational in nature," ALJ Knight concluded that petitioner "has met her burden to establish her left carpal tunnel condition is causally related to her employment." Second, as to timeliness, the ALJ found that petitioner's "left carpal tunnel syndrome worsened over the years and became a disabling condition on March 28, 2012"; that petitioner "suffered an aggravation of a cumulative trauma work injury," which "manifested on March 28, 2012," after a "debilitating left wrist pain"; and that petitioner timely notified her employer of "her aggravation [of a] cumulative trauma injury." ALJ Knight accordingly awarded temporary total disability benefits to petitioner on September 27, 2013.

Petitioner's employer appealed to the CRB, which agreed that ALJ Knight had erred in determining that petitioner had "provided timely notice of her injury." More specifically, the CRB concluded that ALJ Knight had misapplied the "manifestation rule," which the CRB had adopted not under the CMPA but under a parallel provision of the Workers' Compensation Act (WCA),[4] applicable to

_____
[4] D.C. Code § 32-1501 *et seq.* (2012 Repl.).

private sector employees. According to the CRB's formulation in *VanHoose v. Respicare Home Respiratory Care*[5] — announced in response to this court's decision in *King v. District of Columbia Dep't of Emp't Servs.*,[6] — the date of injury under the WCA is "the date the employee first seeks medical treatment for his/her symptoms or the date the employee stops working due to his/her symptoms, whichever first occurs."[7] Applying that rule in this CMPA case, the CRB concluded that ALJ Knight had erred in finding that petitioner's injury occurred on "March 28, 2012," "when her left wrist condition became disabling," rather than much earlier, at the time of her "1992 diagnosis of carpal tunnel and [her] contemporaneous realization that it was work related."

_____

[5] CRB No. 07-022, 2007 D.C. Wrk. Comp. LEXIS 409 (July 23, 2007).

[6] 742 A.2d 460 (D.C. 1999). In *King*, we remanded to DOES a claim for total temporary disability benefits for acute back pain under the WCA, ordering the agency to make additional findings of fact and conclusions of law and to establish a "time of injury" rule under the WCA. *Id.* at 462, 473-74.

[7] 2007 D.C. Wrk. Comp. LEXIS 409, at *17. The manifestation rule originated in an earlier DOES decision, *Franklin v. Blake Realty Co.*, H & AS No. 84-26, OWC No. 25856, at 4 (Aug. 18, 1985), in which the DOES Director announced that "[t]he date on which the injury manifests itself is (1) the date on which the employee first sought medical attention for his painful symptoms, whether or not he ceased work or (2) the date of disability, whichever first occurred." As noted above, in *VanHoose* the CRB equated the "date of disability" under *Franklin*'s manifestation rule with the "date the employee stops working due to his/her symptoms." *See* 2007 D.C. Wrk. Comp. LEXIS 409, at *17.

The CRB accordingly vacated ALJ Knight's timeliness determination, and remanded the case to the ALJ for issuance of an order denying petitioner's claim. On remand, ALJ Knight issued revised findings and the required order denying the claim because of untimely notice. Petitioner again appealed to the CRB, whereupon the CRB struck the ALJ's "new" findings (as "beyond the scope of the remand") and again denied petitioner's claim in a second decision and order. This petition for review followed.

## II.

We note, first, that this court reviews the decision of the CRB, not that of the ALJ.[8] And, although we review questions of law *de novo*[9] "because it is emphatically the province and the duty of the judicial department to say what the law is,"[10] "[a]n agency's interpretation of its own regulations or of the statute

---

[8] *See Jones v. District of Columbia Dep't of Emp't Servs.*, 41 A.3d 1219, 1221 (D.C. 2012).

[9] *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1196 (D.C. 2008) (en banc) (citation omitted).

[10] *Kelly v. District of Columbia Dep't of Emp't Servs.*, 76 A.3d 948, 954 (D.C. 2013) (internal quotation marks omitted).

which it administers is generally entitled to great deference from this court."[11] "However, when it appears that the agency . . . did not conduct 'any analysis of the language, structure, or purpose of the statutory provision,' '[i]t would be incongruous to accord substantial weight to [the] agency's interpretation.'"[12] Similarly, "[w]hen the agency's decision is inconsistent with the applicable statute . . . we owe it far less deference, if indeed we owe it any deference at all."[13]

Because the CRB imported the WCA manifestation rule into this case claiming CMPA benefits, we note that this court has emphasized the similarity of these statutes. We have "considered case law under one act to be informative as to

_____

[11] *Poole v. District of Columbia Dep't of Emp't Servs.*, 77 A.3d 460, 465 (D.C. 2013) (quoting *King*, 742 A.2d at 466); *see generally Reyes v. District of Columbia Dep't of Emp't Servs.*, 150 A.3d 1277, 1279 n.3 (D.C. 2016) (citing *MorphoTrust USA, Inc. v. District of Columbia Contract Appeals Bd.*, 115 A.3d 571, 583 (D.C. 2015) to reiterate that "[i]n accordance with the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 . . . (1984), before we afford some deference to an agency's interpretation of the statute that it administers at least two conditions must be met: (1) the statutory language in question must be ambiguous, and (2) the agency's interpretation must be reasonable").

[12] *Proctor v. District of Columbia Dep't of Emp't Servs.*, 737 A.2d 534, 538 (D.C. 1999) (quoting *Mushroom Transp. v. District of Columbia Dep't of Emp't Servs.*, 698 A.2d 430, 433 (D.C. 1997), and *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899-900 (D.C. 1995)).

[13] *McCamey*, 947 A.2d at 1196 (internal quotation marks omitted).

the other."[14]    Moreover, we have explained that "in light of their similar humanitarian purpose," "[w]e interpret these . . . statutes to be consistent with each other, even where the statutes' language is not identical."[15]    More specifically, we have read an "aggravation rule" (relevant here, as we shall see) into the CMPA[16] by analogy to the WCA and the Federal Employees' Compensation Act.[17] Accordingly, we shall reference here both WCA and CMPA decisions.[18]    This is not to imply, however, that differences in statutory language are never relevant to construction of the several compensation statutes.[19]

_____

[14]  *Id.* at 1199 (internal quotation marks omitted).

[15]  *Ross v. District of Columbia Dep't of Emp't Servs.*, 125 A.3d 698, 702 (D.C. 2015) (citations omitted).

[16]  *See McCamey*, 947 A.2d at 1200-01.

[17]  5 U.S.C. § 8101 *et seq.* (2012).

[18]  We add, for future reference, the notice provision of the WCA:  "Notice of any injury . . . in respect of which compensation is payable . . . shall be given within 30 days after the date of such injury . . . or 30 days after the employee . . . is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury . . . and the employment."  D.C. Code § 32-1513 (a).  The definitions section further states that injury "means accidental injury . . . arising out of and in the course of employment."  D.C. Code § 32-1501 (12).

[19]  *Cf. McCamey*, 947 A.2d at 1200-01 (concluding that the aggravation rule could be read into the CMPA where differences in the statutes' language "d[id] not materially alter the analysis").

Finally, in recognizing a difference between cases with a discrete injury and cases with cumulative trauma, this court has never held that all aggravations must be discrete injuries.[20]

## III.

With these preliminary clarifications in mind, we turn to the central questions presented:

1. Whether the CRB erred in considering petitioner's injury to be, exclusively, a cumulative trauma and not an aggravation of a non-disabling pre-existing condition; and, in any event,

2. Whether the CRB erred when applying the "manifestation rule" to determine the date of "injury" from which the 30-day notice requirement of D.C. Code § 1-623.19 (a)(1) began to run.[21]

_____

[20] *Cf. King*, 742 A.2d at 468-69 ("The difference between the typical case of a discrete accident causing an injury (including an aggravating injury) and a cumulative trauma case is merely that in the latter case it is not possible to identify a discrete event occurring at a particular date and time that causes (or aggravates) the injury. Instead, the cumulative traumatic injury becomes manifest only after the body's repeated exposure to individually minor traumas, insults, or harmful employment-related conditions.").

[21] See *supra* note 3.

**IV.**

**A.**

As to the first question, petitioner argues that, in accordance with the ALJ's compensation order, the CRB should have considered petitioner's carpal tunnel syndrome to be an aggravation of a non-disabling pre-existing condition, rather than a cumulative trauma. To be sure, the ALJ's order at issue here was not as clear cut as petitioner makes it out to be.[22] Indeed, the CRB understood the ALJ to have "conflated the legal concepts of a discrete accident causing an injury and a cumulative trauma" — a criticism the CRB had leveled on at least one prior occasion.[23] Nonetheless, after separating these concepts, the CRB characterized petitioner's carpal tunnel injury — a condition whose "symptoms appear and worsen over an extended period of time," and "may be episodic and may subside when the employee's job is altered"[24] — as exclusively a cumulative trauma case.

_____

[22] The ALJ repeatedly mixed the two concepts by characterizing petitioner's claim three times as a hybrid "aggravation of a cumulative trauma work injury."

[23] *See Poole v. Benedict Metal Works*, CRB No. 12-095, 2012 WL 3275998, at *3 (July 25, 2012) ("[I]t . . . seems that the ALJ may have conflated the notice requirement in [this case] . . . .").

[24] *Lawson v. Lear Seating Corp.*, 944 S.W.2d 340, 341 (Tenn. 1997).

This reading of the ALJ's order is arguably inferable,[25] although not assuredly so.[26] But, however, the order ultimately should be interpreted, after acknowledging the ALJ's conflation of "legal concepts" in characterizing petitioner's injury, the CRB itself erred by "simply ignor[ing]"[27] other plausible interpretations of the ALJ's order and, even more importantly, ignoring other plausible interpretations of the facts.

Depending on the circumstances, for example, courts have held that a carpal tunnel injury may be (1) a cumulative trauma,[28] or, as petitioner contends, (2) an

_____

[25] The ALJ's order states that "Claimant has presented a work scenario of what could be characterized as a cumulative traumatic injury." Similarly, the order states that "[u]nder the *King* approach, the date of the manifestation of Claimant's cumulative injury is March 28, 2012, when her left wrist condition became disabling." Moreover, the ALJ relied on *King*, which itself is a cumulative trauma case.

[26] See *supra* note 22.

[27] *Cf. Payne v. District of Columbia Dep't of Emp't Servs.*, 99 A.3d 665, 675-76 (D.C. 2014).

[28] *See Smith v. District of Columbia Dep't of Emp't Servs.*, 934 A.2d 428, 431-32 (D.C. 2007) (stating, in passing, that "petitioner concedes that some version of the manifestation rule should govern the determination of when . . . a cumulative traumatic injury *such as carpal tunnel syndrome* 'occurs' for statutory purposes," and further stating that "this court considered at length the question of applying the WCA's jurisdictional provisions to cumulative traumatic injuries (*which include carpal tunnel syndrome*)" (emphases added)); *cf. Lawson*, 944 S.W.2d at 341-42 (discussing carpal tunnel syndrome as a cumulative trauma).

aggravation[29] of a non-disabling pre-existing condition.[30]  Apparently, however, the CRB, by relying on *King*, *VanHoose*, and *Franklin*, concluded that every option except cumulative trauma (governed by the manifestation rule) was foreclosed categorically.  If so, and to merit this court's deference,[31] the CRB should have articulated with greater precision a rationale for that conclusion directed at the ALJ's aggravation gloss on the manifestation rule analysis, especially in light of diverging judicial decisions that embrace the foregoing alternatives.[32]  The CRB acknowledged that "[i]t is possible for a discrete accident to aggravate a preexisting condition that was caused by repeated on-the-job trauma."  Why cannot a non-traumatic development short of a "discrete accident" aggravate a pre-existing, yet non-disabling, condition?  The answer, of course, will

_____

[29] As noted earlier, this court has read an "aggravation rule" into the CMPA. See *supra* note 16 and accompanying text.

[30] *See, e.g.*, *City of Philadelphia v. Workers' Comp. Appeal Bd. (Williams)*, 851 A.2d 838, 843 (Pa. 2004) (discussing carpal tunnel syndrome as an "aggravation/cumulative trauma injury," meaning that "the claimant suffers daily aggravation of her diagnosed [carpal tunnel] condition, which becomes disabling only on her last day of employment"); *Berry v. Boeing Military Airplanes*, 885 P.2d 1261, 1268 (Kan. Ct. App. 1994) ("The fact is, carpal tunnel syndrome appears to be a hybrid condition that is neither fish nor fowl.").  Conceivably, a cumulative trauma condition could likewise be aggravated — whether traumatically or non-traumatically.

[31] See text accompanying *supra* note 12; see also *supra* note 11.

[32] See *supra* note 30.

affect whether, and if so when, the employer must be notified of the pre-existing condition, the issue to which we now turn.

**B.**

Relevant here is our decision in *Poole*,[33] where the claimant did not suffer from a cumulative trauma. Rather, he tore his right rotator cuff in preventing a thirty-two-foot ladder from toppling, and did not understand that "his shoulder had been seriously injured and its likely cause" until well after thirty days from the accident.[34] There, we said, the notification period began to run "within thirty days of when [the claimant] reasonably became aware of [the injury's] severity, its consequent capacity to affect [the claimant's] work performance, and its link to the workplace accident."[35] *Poole*, of course, arose under the WCA, which states specifically that the notice period begins to run either (1) within thirty days of the injury or (2) within "30 days after the employee . . . is aware or in the exercise of reasonable diligence should have been aware of a relationship between the

_____

[33] *Poole*, supra note 11.

[34] *Id.* at 463, 469.

[35] *Id.* at 469.

injury . . . and the employment."[36] The CMPA's parallel provision,[37] applicable here, does not track this WCA, awareness-based language in clause two. Accordingly, it might seem that reading clause two into the CMPA would find support mainly in the two statutes' "similar humanitarian purpose."[38]

For the subset of cases relevant here, however, another provision of the CMPA clearly supplements, and very well may remedy, the discrepancy between the notice provisions of the two statutes. According to the CMPA, "In a case of *latent disability*, . . . the time for giving notice of injury begins to run when the employee is aware or, by the exercise of reasonable diligence, should have been aware that his or her condition is causally related to his or her employment."[39] Accordingly, unless the CRB were to conclude, on remand, that carpal tunnel syndrome cannot be a "latent" disability,[40] there may well be a compelling

_____

[36] D.C. Code § 32-1513 (a).

[37] See *supra* note 3.

[38] *Ross*, 125 A.3d at 702; *see generally McCamey*, 947 A.2d at 1200-01 (reading into the CMPA a rule that only the WCA codified expressly).

[39] D.C. Code § 1-623.22 (b) (emphasis added).

[40] The CMPA does not define "latent," *see* D.C. Code § 1-623.01 (definitions), but dictionaries define the term variously as "present and capable of emerging or developing but not now visible, obvious, active, or symptomatic," Merriam-Webster Dictionary, *available at* https://www.merriam-

(continued…)

statutory basis for applying *Poole*'s awareness-based notification test[41] to petitioner's claim here. Doing so, whether the case concerns cumulative trauma or aggravation, would eclipse the need for petitioner to have notified her employer within thirty days of the date she first sought medical treatment, the first prong of the manifestation rule.[42]

## V.

## A.

This leads to the second question presented: whether, under the cumulative trauma theory the CRB applied here, the agency erred in setting the date of injury for notice purposes. It is undisputed that our *King* decision is the text from which our understanding of the CRB's position here must proceed.

_____

(. . . continued)

webster.com/dictionary/latent, or simply as "[c]oncealed, dormant." Black's Law Dictionary 1014 (10th ed. 2014). Courts differ on whether to consider carpal tunnel syndrome a "latent" disability. *Compare Johnson v. City of Jackson*, 2016 Miss. App. LEXIS 447, at *6 (Miss. Ct. App. July 19, 2016) ("Carpal tunnel syndrome is recognized as a latent or progressive injury that is not immediately recognizable."), *with Int'l Paper Co. v. Melton*, 866 So. 2d 1158, 1163 n.2 (Ala. Civ. App. 2003) (distinguishing carpal tunnel injuries from latent injuries).

[41] 77 A.3d at 469.

[42] *See VanHoose*, 2007 D.C. Wrk. Comp. LEXIS 409, at *17.

In *King*, we discussed provisions of the WCA governing "time of injury" for purposes of determining whether, in order to justify recovery, the claimant's "cumulative traumatic injury" had been "principally localized" in the District of Columbia.[43] Without deciding how the "time of injury" is to be fixed, the *King* court, reversing dismissal for lack of jurisdiction, remanded the case to DOES because the agency had failed to make necessary factual findings.[44] At the same time, we "recognize[d] that a specific time of injury may be difficult to pinpoint for a cumulative trauma injury," and that "it [was] necessary to develop a consistent approach to that issue."[45] Following a thorough review,[46] we closed the discussion

_____

[43] 742 A.2d at 462 (discussing D.C. Code § 36-303 (1997), now D.C. Code § 32-1503 (2012)).

[44] *Id.*

[45] *Id.* at 470.

[46] In *Smith*, 934 A.2d at 433, this court summarized the first four options discussed in *King*, as follows:

> (1) [T]he date when the employee's pain or symptoms made continued work impossible; (2) the date of the onset of pain occasioning medical attention, even where such pain does not render the employee unable to work; (3) the date the employee becomes aware of, or through due diligence should have been aware of, a connection between the symptoms and employment; and (4) the date the employee first seeks medical attention for the symptoms (whether or not the employee ceases work), or the date of disability, whichever comes first.

(continued…)

by stating that "[t]he agency charged with administering the [WCA] should make [the choice of which rule to adopt] in the first instance, after carefully analyzing [both] the [applicable] precedents . . . [,] which, in this jurisdiction, plainly support, *if they do not compel*, adoption of some version of a manifestation rule," and the "language, structure and purpose of the statute."[47]  Before DOES could make this determination, however, the *King* case settled,[48] but, as noted earlier, the CRB took up application of the manifestation rule in *VanHoose*,[49] another cumulative trauma case under the WCA.  In *VanHoose*, discussing neither the precedents mentioned by this court in *King* nor the language, structure, or purpose of the statute, the CRB instructed the ALJ to apply the manifestation rule adopted by DOES in *Franklin*,[50] which the CRB revised to read as follows:  (1) "the date the employee first seeks medical treatment for his/her symptoms" or (2) "the date the employee stops

_____

(. . . continued)

> Finally, *King* mentioned a fifth alternative: the "last exposure" or "last day worked" rule, fixing "the time of injury on the date when the employee is last exposed to the trauma or is last able to work."  742 A.2d at 473.

[47]  *King*, 742 A.2d at 473-74 (emphasis added) (citing *Mushroom Transp.*, 698 A.2d at 433).

[48]  *VanHoose*, 2007 D.C. Wrk. Comp. LEXIS 409, at *16.

[49]  *Id*. at *16-17.

[50]  H & AS No. 84-26, OWC No. 25856, at 4; see *supra* note 7.

working due to his/her symptoms, whichever occurs first."[51]   Based on its

presumed "adopt[ion] . . . for [t]his jurisdiction" of this formulation of the

manifestation rule — and without citing *Smith*, where this court condoned the

CRB's adoption of the *Franklin* formulation of the manifestation rule[52] — the CRB

applied the *Franklin/VanHoose* rule to petitioner's claim here.   We cannot agree

that this ends the matter.

**B.**

First, we shall assume for sake of argument the soundness of applying

*Franklin* and its progeny here.   Arguably, the ALJ implicitly found (as to the first

alternative under the manifestation rule) that, in having a "routine checkup" under

her health plan in 1992, petitioner had not "sought medical attention"[53] for carpal

tunnel syndrome.[54]   According to petitioner's testimony, credited by the ALJ, the

_____

[51]   *VanHoose*, 2007 D.C. Wrk. Comp. LEXIS 409, at *17; see *supra* note 7.

[52]   *Smith*, 934 A.2d at 437-38.

[53]   See *supra* note 7.

[54]   In discussing petitioner's medical history during the period beginning when "she was initially diagnosed in 1992" through her years of "self-medicat[ion]" between 1993 and 2010, the ALJ concluded that there was "no evidence Claimant sought medical treatment for her condition."

physician[55] who conducted the 1992 checkup told petitioner that "it look[ed] like [she had] carpal tunnel syndrome," "suggested" that she get a wrist splint and "take something for pain," but did not "prescribe anything specifically." The record does not indicate whether petitioner initiated a concern about wrist pain or mentioned it in response to questions from the physician surveying her health. Thus, petitioner's account of the checkup reflects only a "diagnos[is]," which the CRB has repeatedly held does not, as such, equate with seeking medical care.[56]

Second, the CRB's application of the first alternative under the manifestation rule represents an unexplained, and therefore arbitrary and capricious,[57] departure from DOES's previous articulation and application of that

_____

[55] Petitioner could not recall the name of the doctor who diagnosed her.

[56] *See, e.g.*, *Hall v. Daughters of Charity*, CRB No. 05-245, 2005 WL 3691842, at *3 (Jan. 5, 2005) ("To the extent that there is any error by the ALJ, it is only that the date of injury in this case should be found to have been December 11, 1998, the date that Respondent sought the medical care from Dr. Banton, as opposed to the date identified by Petitioner . . . , the date that Dr. Banton assigned the carpel [sic] tunnel diagnosis."); *cf. Bagbonon v. Africare*, CRB No. 03-121, 2005 WL 3601785, at *3 (Nov. 1, 2005) (stressing that the dispositive fact is *not* when a claimant's condition was diagnosed).

[57] *ABM Onsite Servs.-West, Inc. v. NLRB*, 849 F.3d 1137, 1142 (D.C. Cir. 2017) ("Because an agency's unexplained departure from precedent is arbitrary and capricious, we must vacate the Board's order.").

alternative. Without elucidation, the CRB focused on the date of "diagnosis"[58] rather than on the date petitioner first sought medical treatment[59] — a focus previously rejected (as we have noted).[60] This, too, was reversible error.

## C.

We emphasize that DOES is not required to consider itself wedded to a manifestation rule. Admittedly, in *Smith*, an earlier carpal tunnel syndrome case (under the WCA), we stated that "DOES did no more than accept the invitation that this court extended in *King* to resolve the issue of fixing the time of injury in cases of cumulative trauma. [DOES] closely adhered to the court's suggested guidelines and selected a manifestation rule from among the several discussed in

_____

[58] The CRB's decision reads as follows:

> Evidence in the record clearly established that Claimant was first *diagnosed* with carpal tunnel in 1992 and the following year, 1993, asked to be detailed to a position that required less typing. . . . While Claimant's condition became disabling on March 28, 2012, when applying the *Franklin* manifestation rule and determining which came first, it was the 1992 *diagnosis* of carpal tunnel and Claimant's contemporaneous realization that it was work related, that occurred first. Therefore, the ALJ's determination of March 28, 2012 as the date of injury is not in accordance with the law and cannot stand.

[59] See text accompanying *supra* note 51.

[60] See *supra* note 56.

that decision."[61] This was a generous reading of the DOES effort to comply with *King*.[62] It does not preclude DOES here, or in the future, from adopting another rule more precisely tailored to fixing the time of injury in cases of cumulative trauma, where the initial manifestation of injury is so weak — so far from disabling — that it does not affect continuation of one's work, and thus may not create a reasonable perception that a "notice of injury" to the employer would be required.

_____

[61] 934 A.2d at 437.

[62] According to the CRB's ruling in *Smith*, it had simply "adopt[ed] the reasoning and legal analysis expressed by the ALJ" because of the ALJ's "well[-] reasoned decision." *Smith v. Fed. Data Corp.*, CRB No. 03-155, 2005 WL 3271699, at *1 (Nov. 26, 2003). This adopted ALJ compensation order had dutifully cited *King*, and then quoted *Franklin's* formulation of the manifestation rule by citing *Jimenez v. District of Columbia Dep't of Emp't Servs.*, 701 A.2d 837 (D.C. 1997) — a case that (1) predated *King*, (2) was distinguished in *King* as discussing a different provision of the WCA, 742 A.2d at 471 n.11, and (3) did not recite the *Franklin* manifestation rule. The only other discussion of the manifestation rule and its variants in the ALJ's *Smith* compensation order, *see* OHA No. 03-104, OWC No. 583495, at 3 n.1 (Aug. 21, 2003), is a recitation of *Franklin*, which we decided in *King* did not conclusively "resolve the question . . . of how to fix the time of a cumulative traumatic for [jurisdictional] purposes." 742 A.2d at 472. The ALJ in *Smith* also acknowledged the awareness-based formulation adopted in *Railco Multi-Constr. Co. v. Gardner*, 564 A.2d 1167, 1172 (D.C. 1989), which the *King* court had similarly rejected, *see* 742 A.2d at 472, but the ALJ included no discussion of one formulation versus another. In other words, the CRB's reliance on *Franklin's* manifestation rule in *Smith*, approved by this court for the circumstances of that case, did not foreclose the CRB from compliance with all the guidelines mandated in *King* — a mandate we reassert here. See text accompanying *supra* note 12.

The CRB accordingly remains free to analyze the applicable "precedents," as well as the "language, structure and purpose" of the relevant statutory provisions, as we ordered in *King*.[63]  We reiterate that "where a cumulative traumatic injury becomes manifest long before it becomes totally disabling, and the employee continues to work in the interim," it is possible, perhaps likely, that "alternatives to the manifestation rule would better fulfill the goals of the [CMPA]."[64]  Bearing in mind the particular danger of punishing an employee for continuing to work despite minor discomfort after consulting with a medical professional,[65] we believe that DOES would be well advised, in light of cases like

_____

[63]  *King*, 742 A.2d at 473; *see Poole*, 77 A.3d 466-67 (explaining that "[w]e owe little, if any, deference to the CRB's conclusory statement, without conducting any analysis of the language, structure, or purpose of the statutory provision") (internal quotation marks).

[64]  *King*, 742 A.2d at 473.

[65]  In *King*, 742 A.2d at 473, we quoted *Lawson*, 944 S.W.2d at 342, stating:

> [I]f we were to adopt either the date on which the injury "manifests itself" or the date on which the injury is "diagnosed," we would set a potential trap for the individual who, despite pain and discomfort, continues to work long after his or her carpal tunnel is "diagnosed" or has "manifested itself." . . .  It seems to us that we should adopt the rule that causes the least potential prejudice and upholds the spirit of our Workers Compensation Act. We believe use of the last day of work accomplishes both of those purposes.

(continued…)

this one, to study — and discuss — decisions by courts that have adopted "alternative rules for specifying the time of injury in cumulative trauma cases," such as the "last exposure" or "last day of work" rule.[66]

## VI.

For the foregoing reasons, we reverse and remand the case to the CRB for further proceedings consistent with this opinion.

*So ordered.*

_____

(. . . continued)

We further quoted *Oscar Mayer & Co. v. Indus. Comm'n*, 531 N.E.2d 174, 176 (Ill. App. Ct. 1988), where that court explained:

By their very nature, repetitive-trauma injuries may take years to develop to a point of severity precluding the employee from performing in the workplace. An employee who discovers the onset of symptoms and their relationship to the employment, but continues to work faithfully for a number of years without significant medical complications or lost working time, may well be prejudiced if the actual breakdown of the physical structure occurs beyond the period of limitation set by statute.

[66] *King*, 742 A.2d at 473.