*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0054

MIRIAM RIEGER, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

HOWARD UNIVERSITY and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., INTERVENORS.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(2022-CRB-000057)

(Submitted December 7, 2023                    Decided June 6, 2024)

*Krista DeSmyter* and *Kevin H. Stillman* were on the brief for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, filed a Statement in Lieu of Brief.

*William H. Schladt* and *Matthew E. Fioravante* were on the brief for intervenors.

Before MCLEESE and DEAHL, *Associate Judges*, and THOMPSON, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Miriam Rieger challenges an order of the Compensation Review Board ("CRB") concluding that she was not entitled to workers' compensation benefits because her injury did not "aris[e] out of and in the course of" her employment. D.C. Code § 32-1501(12). We reverse the CRB's order and remand for further proceedings.

## I. Factual and Procedural Background

Ms. Rieger filed a claim for benefits in connection with an injury that she suffered in June 2021. The evidence that Ms. Rieger presented to the ALJ in support of her claim included the following.

In June 2021, Ms. Rieger was a midwife and faculty member at Howard University. Her position involved working at multiple locations on the university's medical campus, including the main hospital building, where she had an office, and the medical-arts building, where she often conducted patient visits. On the morning of June 23rd, Ms. Rieger planned to take her first appointments of the day in the medical-arts building after retrieving a document from her office in the main hospital building.

On days when Ms. Rieger drove herself to work, she always parked on the hospital grounds, in an employee parking lot located right by the main hospital building near the intersection of Georgia Avenue and V Street Northwest. On June

23rd, Ms. Rieger got a ride, and she was dropped off on hospital property right by the employee parking lot and the entrance to the main hospital building. She started walking toward the main hospital building, but she realized before she got to that building that she had the document she needed, so she then started to walk to the medical-arts building. To get to the medical-arts building, Ms. Rieger took her usual route from the front of the main hospital building through the medical campus, leaving university property to turn onto W Street and then onto Georgia Avenue, where the only entrance to the medical-arts building was located. It was not possible to go to the medical-arts building from the location where Ms. Rieger was dropped off without leaving university property.

As Ms. Rieger turned onto Georgia Avenue, a jogger running on Georgia Avenue collided with her. The collision caused the contents of Ms. Rieger's work bag to fall out and hit her. A large medical textbook hit her in the face, and she fell to the sidewalk, landing on her lower back and hip. Ms. Rieger sought treatment and was initially diagnosed with a concussion, whiplash, and nausea, and she was restricted from working. Ms. Rieger subsequently was diagnosed with post-concussion syndrome and restricted from working until April 2022, when she was cleared for work with restrictions.

Howard University and its insurer (collectively, "Howard University") introduced evidence tending to support a conclusion that Ms. Rieger was actually dropped off outside of university property and had not yet set foot on university property when she was injured.

Crediting Ms. Rieger's evidence, the ALJ made the following findings about the circumstances of Ms. Rieger's injury. Ms. Rieger was dropped off for work on university property, near the main hospital building and close to an employee parking lot. She headed on foot toward the main hospital building, but then she realized that she already had the document that she had intended to retrieve. To get to the medical-arts building from where she was dropped off, Ms. Rieger had to leave the university grounds and walk on a public sidewalk. Ms. Rieger was injured while on a public sidewalk near the corner of Georgia Avenue and W Street.

Based on those factual findings, the ALJ concluded that Ms. Rieger's injury arose out of and during the course of her employment. The ALJ acknowledged the well-established "going and coming" rule, under which injuries to employees "sustained off the work premise[s], while en route to or from work, generally are not within the category of injuries arising in the course of the employment." *Lee v. D.C. Dep't of Emp. Servs.*, 275 A.3d 307, 315 (D.C. 2022) (brackets and internal quotation marks omitted). The ALJ also acknowledged the rule that the workers'

compensation statute generally covers injuries suffered by employees who have arrived on their employer's premises but are going to or coming from their precise work location. *Gaines v. D.C. Dep't of Emp. Servs.*, 210 A.3d 767, 773 (D.C. 2019).

The ALJ then addressed whether the workers' compensation statute covers an injury that occurs when an employee arrives on the employer's premises for work, leaves the employer's premises to travel to another part of the employer's premises, and is injured during that travel outside the employer's premises. Noting that this jurisdiction had not specifically addressed that scenario, the ALJ relied on a Maryland decision that in turn relied on a leading workers' compensation treatise for the principle that such injuries normally are covered by workers' compensation statutes. *See Carter v. M. V. Constr. Corp.*, 422 A.2d 44, 49 (Md. 1980) ("One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of [the] employer's premises, whether going and coming, or pursuing . . . active duties.") (internal quotation marks omitted); *see also* 2 Arthur Larson et al., *Larson's Workers' Compensation Law* § 13.01[4][a], at 13-25 (2023) (same).

Under that approach, the ALJ concluded that Ms. Rieger's injury arose out of and during the course of her employment. Specifically, the ALJ explained that (1) it was reasonable and foreseeable that Ms. Rieger would be dropped off for work at a

location on the university's premises that was away from street traffic and was near an employee parking lot; (2) Ms. Rieger was injured while walking on a public sidewalk that was her means of getting from where she was dropped off to the medical-arts building; (3) Ms. Rieger had a work-related reason for being on the sidewalk where she was injured; (4) Ms. Rieger's presence on the sidewalk where she was injured was "reasonably incidental" to her trip between two portions of the university's premises; and (5) Ms. Rieger would not have been injured but for the obligations of her employment.

The CRB reversed. The CRB noted that this jurisdiction has not yet adopted the principle that the workers' compensation statute normally covers injuries that occur while an employee is travelling on public property between two parts of an employer's premises. The CRB did not decide whether to adopt the principle. Rather, the CRB concluded that, even if that principle were adopted, it would not apply in this case. As the CRB interpreted Maryland law, the principle applies only if it was strictly necessary for the employee to travel over premises not owned by the employer. In the CRB's view, that requirement was not met, because Ms. Rieger could have been dropped off directly in front of the medical-arts building but made a "purely personal" choice to instead be dropped off near the main hospital building.

The CRB was not persuaded by Ms. Rieger's reliance on this court's decisions in *Lee*, 275 A.3d 307, and *Gaines*, 210 A.3d 767. Although this court held that the injuries in those cases were covered by the workers' compensation statute, the CRB viewed each case as distinguishable. In *Lee*, the injury at issue occurred off-premises, but the employee—unlike Ms. Rieger—was being paid for travel between two work sites. *Lee*, 275 A.3d at 315 ("This case fits within a well-established exception to the going and coming rule, providing that when the employee is paid an identifiable amount as compensation for time spent in a coming or going trip, the trip is within the course of employment.") (brackets and internal quotation marks omitted). In *Gaines*, the employee was injured on the premises of her employer (Washington Metropolitan Area Transit Authority ("WMATA")), while on duty and between two shifts, as she was headed to an employee break room. *Gaines*, 210 A.3d at 773.

The CRB likened the circumstances of Ms. Rieger's injury to those of the claimant in *Niles v. D.C. Dep't of Emp. Servs.*, 217 A.3d 1098 (D.C. 2019). In that case, a WMATA employee was injured on WMATA property in College Park, Maryland, during her normal commute to her work site at WMATA headquarters in Washington, D.C. *Id.* at 1100. This court held that the claimant was present on her employer's property at the time of the injury not for any work-related reason, but rather as a member of the general public. *Id.* at 1103. We therefore concluded that

Ms. Niles's was barred by the "going and coming" rule, because her injury occurred "on her regular commute to work, during which she was not performing any work duties." *Id.*

The CRB in this case concluded that Ms. Rieger's claim was barred for the same reason the claim was barred in *Niles*: the "injury occurred on [the employee's] regular commute to work, during which [the employee] was not performing any duties reasonably related to or incidental to [the employee's] work."

After concluding that Ms. Rieger's claim was barred from compensation, the CRB remanded the case to the ALJ. Ms. Rieger petitioned this court for review of the CRB's decision. This court generally has "jurisdiction to review only agency orders or decisions that are final." *Riley v. D.C. Dep't Emp. Servs.*, 258 A.3d 834, 841 (D.C. 2021) (internal quotation marks omitted). Agency orders remanding a case for further proceedings are not generally viewed as final orders. *E.g.*, *Warner v. D.C. Dep't of Emp. Servs.*, 587 A.2d 1091, 1093 (D.C. 1991). This court therefore issued an order directing Ms. Rieger to show cause why the petition for review should not be dismissed for lack of a final order. Ms. Rieger responded by arguing that the remand order directed the ALJ to take a merely ministerial act, because the CRB had concluded that Ms. Rieger's claim was barred. *See, e.g.*, *id.* (remand orders are treated as final if they leave only ministerial acts on remand). Ms. Rieger also

noted that on remand the ALJ followed the CRB's instructions and denied Ms. Rieger's claim.

Accepting Ms. Rieger's argument, a motions division of this court discharged the order to show cause. Howard University has not contended that the petition for review should be dismissed for lack of a final order, and we see no reason to disagree with the conclusion of the motions division. *See generally, e.g.*, *In re J.A.P.*, 749 A.2d 715, 717 (D.C. 2000) (unless motions division denies motion to dismiss with prejudice, merits division assigned to decide case is not bound by motions division's jurisdictional ruling if, after further briefing and consideration, merits division concludes that court lacks jurisdiction).

## II. Analysis

### A. Standard of Review

We review a decision of the CRB to determine whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. D.C. Dep't of Emp. Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). Although we generally review legal determinations de novo, we have often given deference to the CRB's reasonable interpretation of the workers' compensation statute. *E.g.*, *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 267 A.3d 1068, 1071 (D.C. 2022). Recent decisions of this court, however,

have raised questions about the extent to which the CRB is entitled to such deference. *E.g.*, *Lecea v. D.C. Dep't of Emp. Servs.*, 301 A.3d 734, 738-39 (D.C. 2023). We do not address in this case whether the CRB's reasonable legal conclusions about the scope of the workers' compensation statute are generally entitled to deference, because we instead assume without deciding that such deference is generally warranted.

In reviewing agency factual findings, we apply the substantial-evidence standard. *E.g.*, *Poole v. D.C. Dep't of Emp. Servs.*, 77 A.3d 460, 464 (D.C. 2013). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 465 (internal quotation marks omitted). "In a workers' compensation case, we review the decision of the [CRB], not that of the ALJ. In doing so, however, we cannot ignore the compensation order which is the subject of the [CRB's] review." *Georgetown Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 916 A.2d 149, 151 (D.C. 2007) (citation omitted). "Just as the court is required to defer to the ALJ's factual finding, so must the CRB. The CRB may not consider the evidence *de novo* and make factual findings different from those of the ALJ." *Poole*, 77 A.3d at 469 n.12 (citation, brackets, and internal quotation marks omitted). If an ALJ's factual finding "is supported by substantial evidence in the record, the CRB [is] bound by it, even if

[the CRB] might have reached a different result based on an independent review of the record." *Id.* (internal quotation marks omitted).

Workers' compensation statutes "are remedial in character and are generally construed liberally in favor of claimants." *Marsden v. District of Columbia*, 142 A.3d 525, 529 (D.C. 2016); *see also, e.g.*, *Kolson v. D.C. Dep't of Emp. Servs.*, 699 A.2d 357, 359 (D.C. 1997) (noting "strong legislative policy favoring awards in arguable cases") (internal quotation marks omitted).

## B.  General Principles

To be covered under the workers' compensation statute, an injury must "aris[e] out of and in the course of employment."  D.C. Code § 32-1501(12).

"The requirement that an injury arise out of employment refers to the origin or cause of the injury."  *Bentt v. D.C. Dep't of Emp. Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (brackets and internal quotation marks omitted).

> [R]isks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks-*i.e.*, risks having no particular employment or personal character.  Harms from the first are universally compensable.  Those from the second are universally noncompensable.  To determine whether harm from an injury caused by a neutral risk arises out of one's employment, this court has adopted the positional-risk test.  Under the positional-risk test, an injury arises out of

employment so long as it would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where [the claimant] was injured.

*Id.* (citations and internal quotation marks omitted).

The positional-risk test "is a liberal standard which obviates any requirement of employer fault or of a causal relationship between the nature of the employment and the risk of injury. Nor need the employee be engaged at the time of the injury in activity of benefit to the employer." *Clark v. D.C. Dep't of Emp. Servs.*, 743 A.2d 722, 727 (D.C. 2000) (citations and internal quotation marks omitted).

We determine whether an injury arose "in the course of" employment "on the basis of the time, place[,] and circumstances under which the injury occurred." *Bentt*, 979 A.2d at 1234 (internal quotation marks omitted). "[A]n accident occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while [the employee] is reasonably fulfilling duties of [the] employment or doing something reasonably incidental thereto." *Id.* (internal quotation marks omitted). Injuries that occur outside the precise hours of employment may in certain circumstances be deemed to have occurred in the course of employment, if they occur during "a reasonable and foreseeable activity that is reasonably related to or incidental to [the] employment or [that] resulted from a risk created by [the] employment." *Vieira v.*

*D.C. Dep't of Emp. Servs.*, 721 A.2d 579, 583 (D.C. 1998) (internal quotation marks omitted).

Although "arising out of" employment and "arising in the course of" employment are distinct concepts, "the two are not totally independent; frequently proof of one will incidentally tend to establish the other." *Kolson*, 699 A.2d at 360 (internal quotation marks omitted). Moreover, "when it is established that an injury or death occurs in the course of employment, that fact strengthens the presumption that it arises out of the employment, and *any doubts as to that fact* should be resolved in the claimant's favor." *Clark*, 743 A.2d at 728 (brackets and internal quotation marks omitted).

### C.  Arising out of Employment

The CRB concluded that Ms. Rieger's injury did not arise out of her employment because the injury arose from a "purely personal" choice by Ms. Rieger. We disagree.

Our disagreement turns in part on a factual issue. The ALJ found as a matter of fact that Ms. Rieger had a specific reason to be dropped off near the main hospital building because she was planning to go inside that building to pick up a work document. That factual finding was supported by substantial evidence, and the CRB did not suggest otherwise. Moreover, Ms. Rieger's reason for being dropped off at

that location—to pick up a work document—was clearly related to her work. In our view, it follows that Ms. Rieger's decision to be dropped off at that location rather than in front of the medical-arts building was not a "purely personal" choice unrelated to Ms. Rieger's work.

We have treated risks as purely personal when they were "thoroughly disconnected from the workplace," so that it was "clear that the employment contributed nothing to the episode." *United Parcel Serv. v. D.C. Dep't of Emp. Servs.*, 297 A.3d 1085, 1090 (D.C. 2023) (internal quotation marks omitted). We think it is clear that the risk that Ms. Rieger might be injured while walking from the drop-off point on hospital premises to the medical-arts building was not "purely personal" and was at a minimum a neutral risk. *Cf., e.g.*, *id.* at 1087, 1090 (risk that UPS driver might crash while riding scooter from place where he parked UPS truck to bagel shop about ½ mile away was neutral risk rather than purely personal risk).

For neutral risks, whether an injury arises out of employment depends on whether the injury "would not have happened but for the fact that conditions and obligations of the employment placed [the employee] where [the employee] was injured." *Lee*, 275 A.3d at 313 (emphasis omitted). As previously noted, we have applied "a liberal standard" in applying that test. *Id.* (internal quotation marks omitted). The conditions and obligations of employment need not have required the

employee to have been "in the particular place at the particular time" of the injury. *Id.* at 314 (internal quotation marks omitted). This court "has not understood the concept of arising out of employment so narrowly, because many workplace injuries occur in circumstances in which the employer did not dictate the precise location of the employee at the precise time of the injury." *Id.* (internal quotation marks omitted).

Under this standard, we conclude that the obligations of Ms. Rieger's employment placed her where she was injured by a neutral risk. Ms. Rieger had arrived on her employer's premises for her workday in a reasonable location away from street traffic—in the same location she was regularly dropped off, next to the employee parking lot that Howard University provided, where Ms. Rieger parked when she drove herself to work. Ms. Rieger also had a specific work-related reason for being dropped off at that particular location. Ms. Rieger then took a reasonably direct path from that location to the medical-arts building for her first appointment of the day, which required her to walk along a public sidewalk to reach the entrance. Thus, the obligations of her employment placed her on the corner of Georgia Avenue and W Street, and those obligations were a but-for cause of Ms. Rieger's injury. *Cf. Lee*, 275 A.3d at 310-11, 313-14 (holding that injury arose out of employment where WMATA bus driver employee was injured during break between shifts while

walking from WMATA bus to car that was parked about one mile away next to WMATA garage).

The CRB appeared to conclude that Ms. Rieger's claim did not arise out of her employment because the claim was barred under the "going and coming" rule. We disagree. Once Ms. Rieger arrived onto university premises to begin her work there, her claim was not barred under the theory that she was still simply coming to work. *See Gaines*, 210 A.3d at 773 (once employee arrives on employer's premises, "going and coming" rule does not bar claim even if employee has not yet reached specific worksite on premises).

### D. Arising in the Course of Employment

The CRB also concluded that Ms. Rieger's injuries did not arise in the course of employment. Here too we disagree.

At the time of the injury, Ms. Rieger had not yet arrived at any of her particular work stations. Moreover, Ms. Rieger was a salaried employee, so it is not entirely clear whether the injury occurred within the precise "period of employment" on the date of the injury. *Bentt*, 979 A.2d at 1235 (internal quotation marks omitted). As previously noted, however, injuries that occur outside the precise hours of employment may in certain circumstances be deemed to have occurred in the course of employment if they occur during "a reasonable and foreseeable activity that is

reasonably related to or incidental to [the] employment." *Vieira*, 721 A.2d at 583 (internal quotation marks omitted). We think it clear under our cases that Ms. Rieger's injury arose in the course of employment.

The injury occurred after Ms. Rieger had arrived on university premises to begin performing duties there that day. She was dropped off in a location on the premises—near an employee parking lot—that was proximate to her various specific work stations. She therefore was in a location that the university would reasonably have expected her to be. It was entirely foreseeable that she at some point would need to go to the medical-arts building to perform duties there. There was no way to get from the main hospital building to the medical-arts building without leaving the university premises, so it was also entirely foreseeable that employees like Ms. Rieger would need to walk on the public sidewalk where Ms. Rieger was injured. In sum, we conclude that Ms. Rieger was injured during "a reasonable and foreseeable activity that [was] reasonably related to or incidental to . . . her employment." *Vieira*, 721 A.2d at 583 (internal quotation marks omitted); *cf. Lee*, 275 A.3d at 310-11, 314-15 (holding that injury arose in course of employment where WMATA bus driver was injured during break between shifts while walking from WMATA bus to car that was parked about one mile away next to WMATA garage; it was foreseeable that claimant would need to walk to car from work station).

In ruling otherwise, the CRB relied heavily on this court's decision in *Niles*, 217 A.3d 1098. As previously noted, that case involved a WMATA employee who was injured on WMATA property in College Park, Maryland, during her normal commute to her work site at WMATA headquarters in Washington, D.C. *Id.* at 1100. We held that Ms. Niles was present on WMATA's property at the time of the injury not for any work-related reason, but rather as a member of the general public. *Id.* at 1103. We therefore concluded that Ms. Niles's claim was barred by the "going and coming" rule, because her injury occurred "on her regular commute to work, during which she was not performing any work duties." *Id.* As we explained, it was true only "in a technical and artificial sense" that Ms. Niles was on her employer's premises when she was injured. *Id.* (internal quotation marks omitted).

We view *Niles* as readily distinguishable. The claimant in *Niles* happened to be on WMATA's property, not for any work-related reason, but rather as part of her regular commute, because of the unusual circumstance that her employer was a public transit agency. 217 A.3d at 1103. Also, the claimant in *Niles* was nowhere near her work site at the time of her injury. *Id.* In contrast, Ms. Rieger had arrived on the premises of a conventional employer, at a natural drop-off point quite close to her various work stations. Her injury occurred as she took a direct and foreseeable path from that drop-off point to one of her work stations.

As previously noted, the ALJ relied on a broader principle adopted in a decision from Maryland: "compensation is almost always awarded [when] the employee travels along or across a public road between two portions of [the] employer's premises, whether going and coming, or pursuing . . . active duties." *Carter*, 422 A.2d at 49 (internal quotation marks omitted). We express no view about that broader principle. Rather, we rule more narrowly that in the particular circumstances of this case Ms. Rieger's claim was covered by the workers' compensation statute. We reverse the contrary judgment of the CRB and remand the case for further proceedings.

*So ordered.*